UNITED STATES DISTRICT COURT OF **09   CV   0838**
WESTERN DISTRICT

---

Maurice Larry DeLee
      Plaintiff,

| CIVIL RIGHTS |
| --- |
| COMPLAINT |
| PURSUANT |
| 42 U.S.C. §1983 |
| Demand For Jury Trial |

        Against

Sergeant, Charles W. Hannigan; C.O. S. White;
C.O. Cahart; R.N. Esposito; Lt. Lambert; Lt. Dixon;
Lt. Polak; Lt. Bea; Superintendent James Conway;
FDS., Khahfia; DSS. Chappius;  E. O'Mara; D. O'Connor;
N. Bezio ,all being sue in their official and individual capacity
      Defendants,

UNITED STATES DISTRICT COURT
FILED
SEP 2 5 2009
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

---

Plaintiff, Maurice Larry DeLee, hereby  moves before this Honorable District Court of Western District of New York upon a Civil rights Complaint Pursuant to 42 U.S.C. §1983 for the defendant's violation's of plaintiff's rights under the U.S. Constitution and alleges the following:

Parties: Defendant, Ms. Esposito official position is ( R.N. at the Attica Correctional Facility) and is being sued in her individual and official capacity. ( address unknown);

Defendant: Mr. Lambert, official position is a (Lieutenant Officer at the Attica Correctional Facility)  and is being sued in his official and individual capacity. (address unknown);

Defendant: Mr. Dixon, official position is a (Lieutenant Officer at the Attica Correctional Facility) and is being sue in his official and individual capacity; (address UNKNOWN).

1.

Defendant: Mr. Polak, official position is a (Lieutenant Officer at the Attica Correctional Facility)  and is being sued in his official and individual capacity. ( address unknown);

Defendant: Mr. Bea, official position is a  ( Lieutenant Officer at the Attica Correctional Facility) and is being sued in his official and individual capacity. (address unknown);

Defendant: James Conway official position is a (Superintendent at the Attica Correctional Facility) and is being sued is his official and individual capacity; ( address UNKNOWN ).

Defendant: Mr. Khahfia, official position is a  (First Deputy Superintendent at the  Attica Correctional Facility) and is being sued in his official and individual capacity. (address unknown);

Defendant: E. O'Mara, official position is a ( Senior Counselor at  the Attica Correctional Facility Special Housing Unit) and  is being sue in his individual and official capacity. (address unknown);

Defendant: D. O'Conner, official position is a (Senior Counselor at the Attica Correctional Facility) and  is being sued in his individual and official capacity. (address unknown);

Defendant: N. Bezio; official  position is a  (Director of Special Housing Unit of the Attica Correctional Facility) and is being sued in his individual   and official capacity. (address unknown).

2.

## STATEMENT OF JURISDICTION

This Honorable District Court has exclusive jurisdiction of this complaint Pursuant to 28 U.S.C. §1331, §1343(3) and (4) and§ 2201.

There has been no other lawsuits in State or Federal Court dealing with the same facts involved in this action! However, plaintiff has filed a separate lawsuit against (defendant ) Thomas A. Lenkiewiez, Esq under Northern District Court Docket No. 5:08-cv-0074, District Judge George H. Lowe, United States Magistrate Judge, filed on  May 5, 2008, that action was dismissed by district court for failing to state a claim upon which relief can be granted.

## FIRST CAUSE OF ACTION

FACTS:

1. On November 17, 2007, approximately 6:30 pm C.O.  S. White; John Doe and Sergeant (Charles W. Hannigan) of Attica Correctional Facility  P.O. Box 149 Attica, New York 14011-0149, came to plaintiff cell of C-Block 36 company 12 cell *per grievance* #52700-07 and claim #000-0177 for investigation (See Exhibit A•11 and B•2) herein,  of the misbehavior reports written by C.O. S. White and Sergeant Charles W. Hannigan on November 17, 2007. In addition to (Exhibit A•1-16 and B•1-14) herein, of which had already been investigated and concluded on (in resulting in plaintiff's favor).

3.

2. While C.O. S. White and John Doe Correctional Officer(s) conducted a cell search of plaintiff. C.O. S. White repeatedly questioned and harassed plaintiff of his grievance which plaintiff had submitted and (filed) approximately a month prior 10/25/07 for money that was deducted from the plaintiff account (for commissary), and that plaintiff never received and of which plaintiff was (refunded) for after already an (extensive grievance and claim investigation) from IGRC and the institution stewards office, resulting in plaintiff's favor.

3. During plaintiff cell search plaintiff was told to stand outside his cell of 36 company 12 cell, while C.O. S. White located Sergeant Charles W. Hannigan, who (moments) later arrived and instructed plaintiff to follow him and C.O. S. White and John Doe officer(s) to an isolated area of C-block 36 company day room, (which was closed non-program hours).

4. Thereafter, Sergeant Charles W. Hannigan then instructed the company control booth officer (John Doe) to open and ordered plaintiff inside, once inside Sergeant Charles W. Hannigan then showed plaintiff a *"memo"* per Lt. Lambert. A review of plaintiff (tapes) of 07-1732 and 07-1733, demonstrates plaintiff Tier III hearing proceedings conducted on 11/29/07 approximately 11:30 am concedes Sergeant Charles W. Hannigan quoting that Lt. Lambert, authorized Sergeant Charles W. Hannigan *per "memo"* to conduct a search resulting in the sexual assault,

4.

(malicious, sadistically in retaliation) of plaintiffs grievance claim (refund) authorized and given by the state for (the states negligence of losing plaintiff's commissary).  See Exhibit B•15 herein, of plaintiffs inquiry to inmate records coordinator Ms. Sandra Prusak, indicates *"no such memo existed"*.( See Exhibit C•1-4 herein), of the plaintiff's attempts to file a grievance upon review of listening to hearing tape #07-1683 on 1/9/08..., which was denied by the supervisor (George D. Struebel) of the Attica Correctional Facility (IGRC) on 1/29/08, after Sergeant Charles W. Hannigan showed plaintiff the alleged *"memo"* per Lt. Lambert. Sergeant Hannigan,  then instructed plaintiff upon 36 company C-block (day room) to sign against his will, relinquishing any and all (refund) money that was rightfully given to plaintiff from such grievance/ commissary claim.

5. Before, thus  Sergeant Charles W. Hannigan and C.O. S. White and John Doe Correctional Officers without any provocation then pursed to  inflict a physical and sexual assault upon plaintiff in an attempt to force plaintiff against his will to sign legible such *"memo"* to relinquish any (refunds) given to him.

6. While during such assault plaintiff later became aware as to (one) of the John Doe named officers (Ms.Carhart), who stood and watched as the assault *(pursued)*. Thereafter, Plaintiff was dragged  up off the floor by Sergeant Charles W. Hannigan; C.O. S. White and John Doe officer(s).   The plaintiff was sexually brutally squeezed by the genitals by (Sergeant Charles W. Hannigan) and forced to sign such *"memo"*

5.

authorized by Lt. Lambert, while also being  punched and kicked with the assistance of C.O. S. White, while John Doe officer(s) stood  around. Only  (after) plaintiff was then escorted from 36 company (day room) and secured in 36 company shower.  Upon returning moments later, Sergeant Charles W. Hannigan, and C.O. S. White came to retrieve plaintiff from the 36 company shower and placed restraints on plaintiff and had lead plaintiff through the corridors of C-Block to A-Block and placed plaintiff on keep lock 10 company 29 cell. (See Exhibit(s) D•1-12) herein, of plaintiff grievances A-52783-07 and other document(s) which were exhausted to the administration January 23, 2008. (See Exhibits F•7-10) herein, of plaintiff documented keep lock from the above mention incident of November 17, 2008, which subsequently was crossed out per (John Doe).

7. Upon plaintiff short (stay) on keep lock in A-Block 10 company  29 cell plaintiff requested medical attention. Which plaintiff was ignored and  only to consequently have John Doe Officer(s) return back to plaintiff cell (20 minutes later) after plaintiff short stay on keep- lock and again had place restraints on plaintiff and had lead plaintiff back through the corridors of A-Block to SHU (for requesting medical attention).

6.

8. Charles W. Hannigan and C.O. S. White, then wrote *(2)* separate false Tier III misbehavior reports against plaintiff of accusation(s) and events that never occurred placing plaintiff to a segregation in SHU that was unwarranted and malicious, in addition to the physical and sexual assault by both officers and John Doe officer(s), because of plaintiff grievance/claim (refund) that was given to plaintiff by the *"state"*. See Exhibit E•1-6 of the plaintiff grievance #A-52831-07 and other document(s) which were exhausted though the administration on January 30, 2008, as well as See Exhibit A•1-16; B•1-15 and D•1-20.

The Constitutional basis for this claim under 42 U.S.C. §1983 is violation of plaintiff rights under U.S. Constitution I; IV and VIII Amendments. Plaintiff exhausted his administrator remedies for this claim. Plaintiff appealed the grievance which was denied.

**FIRST CLAIM:**
**Plaintiff seeks the following relief:**

(a) Retaliation-Deliberate indifference;
(b) Sexual Assault;
(c) Excessive Force; and
(d) Failure to Protect;
Compensatory damages in the amount of $200, 000 dollars

7.

## SECOND CAUSE OF ACTION

FACTS:

9. On November 17, 2007, approximately 8:40 pm upon admission to SHU plaintiff was examined by R.N. Ms. Esposito (of Attica Correctional Facility) in which she falsified plaintiff medical documents in an obvious attempt to assist officer(s) motive to minimize such inquires sustained upon plaintiff, due to the assault by Sergeant Charles W. Hannigan; C.O. White and John Doe officer(s). In which R.N. Ms. Esposito indicated upon plaintiff documentary medical files stating that there were *"no swelling or bruising"* of (left side of plaintiff face). (See Exhibit E•7 Medical document) herein,  upon plaintiff admission to SHU November 17, 2007; however, contrary to Ms. R.N. Esposito *"findings"* and thus of the picture(s) that were taken of plaintiff upon his admission to SHU..., clearly indicates differently. See ( Exhibit F•5, (photo's ) taken of plaintiff upon admission to SHU November 17, 2007 approximately 8:40 pm.   However, due to the conflict of interest of plaintiff not wanting to sign a medical document agreeing to  R.N. Esposito findings and thus of the many officers that were around and of having no privacy

 (left plaintiff without patient confidentiality) to express also the sexual assault inflicted upon plaintiff by Sergeant Charles W. Hannigan, C.O. S. White and John Doe officers.

8.

10.    However, upon nurse Ms. Esposito rounds the following morning of November 18, 2007 approximately 9:00 am  where there were of less escorted officers to harass plaintiff...plaintiff (again) attempted to reconcile his differences with nurse Ms. Esposito lack of medical care,  to express his emergency medical needs with more specificity of the physical and sexual assault inflicted by Sergeant Charles W. Hannigan, C.O. S. White, and John Doe Officers upon plaintiff;  in which plaintiff had been (maliciously) fondled and squeezed by the genitals from  Sergeant Charles W. Hannigan upon C-Block 36 company (day room).  Still nurse Ms. Esposito, denied plaintiff to see a physician leaving plaintiff in cruciating pain. Only then, upon Lt. Bea rounds (moments later) November 18, 2007 approximately 9:30 am of SHU,  Plaintiff had again attempted to alert an official (Lt.. Bea) of his medical needs. In which Lt. Bea (then) ordered plaintiff to be taken out of his cell (SHU)  to be examined from  the clinic of  Attica Correctional Facility, by physician nurse (Ms. Esposito) November 18, 2007 approximately 10:30 am.

11.However, before such visual examination by  nurse Ms. Esposito, plaintiff had given Lt. Bea an oral statement upon (interview) of the events  and circumstances that had occurred leading to such injury November 18, 2007 approximately 10:00 am. See Exhibit F•3 and •4 of Lt. Bea's memorandum report dated November 18, 2007 written

9.

to Captain K. Brown in regards to such interview with plaintiff November 18, 2007 approximate 10:00 am. Lt. Bea then instructed plaintiff to be escorted to the infirmary by John Doe officers and Sergeant of SHU, to be examined in which nurse Ms. Esposito conducted by "*visual*" examination; in addition to her (nurse Ms. Esposito) also being instructed by the escorting (John Doe) SHU Sergeant per Lt. Bea's orders to release a medical document from plaintiff files of her findings without any oral or written consent from patient/plaintiff to do so. She nurse (Ms. Esposito) release such records to the SHU escorting (John Doe) Sergeant to Lt. Bea November 18, 2007 approximate 10:30 am. (See Exhibit E•9) herein, plaintiff medical record released without plaintiff consent.  In which Lt. Bea attached such copy of plaintiff medical record to his Lt. Bea memorandum report to Captain K. Brown November 18, 2007 (See Exhibit F•4 of page(2) of Lt. Bea's report) herein.

12. On November 19, 2007 approximately 1:00 pm plaintiff was interviewed (personally ) by a representative of the inspector general office from Albany (Mr. Strough), in which plaintiff stated his injuries and had given a signed written complaint detailing the physical and sexual assault sustained against plaintiff by Charles W. Hannigan, C.O. S. White and John Doe Correctional Officers, upon incident November 17, 2007 approximately 6:30 pm upon C-Block's 36 company( day room) of Attica Correctional Facility.

10.

13. On November 19, 2007 approximately  1:42 pm,  plaintiff was served (2) separate  Tier III misbehaver reports and was erroneously found guilty of all   charges , that were written and fabricated by Sergeant Charles W. Hannigan  and C. O. S. White,  of charges of 105.12, unauthorized organization activity  and  false  statements 107.20, rendered by Lt. Polak, (November 29, 2007) approximately 12:10 pm;  as well as on December 10, 2007 rendered by Lt. Dixon of  100.11  assault  on  staff,  104.11  violent  conduct,  107.10 interference  with  employee  and  107.20  false  statements  (again  for same ▬charge in report of Lt. Polak's).

14.  On November 20, 2007 approximately 9:00 am plaintiff again requested of sick call to be seen by a specialist (because of pain to his genitals and back.  On November 21, 2007 approximately 9:00 am plaintiff again requested of sick call to see a specialist.

15. On November 23, 2007 approximately 9:00 am  plaintiff again requested of sick to see a specialist.

16. On November 27, 2007 approximate 12:05 pm, plaintiff was seen by Doctor Raul and was given Doxtcycline hyclate 100 mg tabs and Motrin 600 tabs for (pain) of plaintiff (▬ testicles ▬) and back,  in which as result of plaintiff injuries making it extremely difficult to walk without a (limp ) or wash himself adequately and  if not impossible unable to sleep at night.

11.

17.  On December 21, 2007, approximately 2:00 pm plaintiff was seen by a technician at Wyoming Community hospital for a ultrasound appointment to his ~~testicles~~ testicles. conducted by (Rebecca H. Sayvone).

18.  On December 21, 2007 approximately 2:00 pm plaintiff was seen by the Doctor Leskowski, of residing sourness to his genitals.

19.  On December 24, 2007, approximately 9:00 am plaintiff requested sick call for a refill of Motrin 600 tabs to relieve still residing pain.

20.  On December 26, 2007 approximately 9:00 am plaintiff requested again for Motrin that plaintiff still had not received upon request of December 24, 2007.

21.  On December 28, 2007 approximately 9:00 am plaintiff was given Motrin for pain.

22.  On or about the end of January 2008, plaintiff was sent to Rochester Strong Memorial Hospital per Doctor Leskowski's referral and was seen and examined by a doctor (specialist) of plaintiff testicles. (See Exhibit E•7-13) herein, of medical documents and Exhibits of plaintiff grievance(s) that were exhausted though the administration by the above mention incidents of this second claim; paragraph (9-22.) .

12.

The Constitutional basis for this claim under 42 U.S.C. 1983 is violation of plaintiff rights I, IV, VIII and XIV Amendments rights.

Plaintiff exhausted his administrative remedies to these claims.

## SECOND CLAIM:
**Plaintiff seeks the following relief:**
(a) Medical Neglect/ Deliberate indifference;
(b) Conspiring to minimize plaintiff suffering from assault;
(c) Violation of plaintiff {Breach of Medical Confidential rights};
(d) Minimizing plaintiff's injuries; and
(e) Extreme emotion distress

Punitive damages in the amount of $100, 000 dollars;

## THIRD CAUSE OF ACTION

FACTS:

23. On November 19, 2007 approximate 1:42 pm and 1:48 pm plaintiff received copies of (2) Tier III misbehavior reports which were fabricated for retaliation in connection with plaintiff claims of the physical and sexual assault inflicted upon him by Sergeant Charles W. Hannigan,  C.O. S. White and John Doe Correctional Officers on 36 Company  day room November 17, 2007. At which time on November 19, 2007, plaintiff received both individual misbehavior reports, plaintiff selected his assistance. See Exhibit A•11-12 and B•2 of misbehavior reports.

24. On November 19, 2007, the assistances came to assist plaintiff concerning C.O. S. White misbehavior report dated on November 17, 2007.

13.

25. On November 19, 2007 pm the assistance came to assist the plaintiff on the misbehavior report by (Sergeant Charles W. Hannigan) dated November 17, 2007. In reporting back to plaintiff both assistances failed to provide the plaintiff with any of his material's requested. Plaintiff made foil request and hippa request dated November 21, 2007 See Exhibit F•6. Also, review hearing tape proceedings 07-1732- and 07-1733 and 07-1683 by Lt. Polak November 21, 2007  and Lt. Dxion November 23, 2007.  These request were not provided to plaintiff during the course of both individual hearings.  In which Lt. Polak and Lt. Dixon failed to afford the plaintiff minimal due process in conducting the Superintendents hearings in this case.

26. Although plaintiff was a lawfully incarcerated prisoner at Attica Correctional  Facility at the time of both individual hearings as a citizen the plaintiff was to be entitled to due process under the law, (but wasn't). The most basic requirement of due process is a fair impartial decision maker. It is submitted that the available record of the proceeding in this matter showed  Lt. Polak and Lt. Dixon conducted the Superintendent hearings of James Conway of Attica Correctional Facility. James Conway who approved the disciplinary convictions is personally involved in depriving the plaintiff of his due process right to call witnesses and failed to provide the plaintiff with a fair hearing in this case. The failure is evident in the way Lt. Polak and Lt. Dixon arbitrarily ruled that the plaintiff was not allowed to submit relevant documentary evidence.

14.

27. In which also, Lt. Dixon states upon the record on November 23. 2007 proceedings of plaintiff tier hearing tape #07-1683, that plaintiff foil requests to remedy his due process in an attempt to prepare his defense (prior to such hearing) due to the carelessness of plaintiff assistances was "inadequate". Review hearing tape 07-1683. However, over the plaintiff objections by Lt. Dixon and (Lt. Polak) statements and their rulings of thus denying plaintiff to call pertinent witnesses(s) that had directly or (indirectly) an involvement in personally investigating the events and circumstances that had lead to and occurred on November 17, 2007 sustaining plaintiff to a physical and sexual assault and segregation to SHU. Of commissary items that were also prior to (investigated and concluded upon by the plaintiff's grievance A-52700-07 and claim No#000-0177-07) resulting in plaintiff favor and refund of money by the states negligence of losing plaintiffs commissary.

28. As its just another showing that Lt. Polak and (Lt. Dixon) made their own determination upon the guilt of plaintiff with the same lack of interest in the evidence. A review of hearings tape 07-1683 conducted by Lt. Polak November 29, 2007 approximately 11:50 am demonstrates plaintiff was extremely limited to questions and answers to and from (Sergeant Charles W. Hannigan) by Lt. Polak and of submitting in documentary evidence information in reference to the incident. Which would support plaintiff being able to show that Sergeant Charles W. Hannigan and C.O. S. White did in fact maliciously sadistically, only came to plaintiff cell as both indicated upon their individual misbehavior

15.

reports written against plaintiff of *"grievance /claim interview;"* in which was a conspired attempt to retaliate and harm plaintiff by means of a physical and sexual assault against plaintiff grievances/claim that plaintiff filed and thus was refunded for. Review hearing tape by Lt. Polak November 29, 2007, as another showing of the manipulation /coaching of the officers of Attica Correctional Facility…, in an attempt to (silence) plaintiff of exercising his constitutional rights of minimal due process and of plaintiff First Amendment, in being able to comment on the charges and evidence.

29. Lt. Polak and alike Lt. Dixon arbitrarily hung up via phone during plaintiff questioning of his witnesses(s) (Sergeant Charles W. Hannigan ) and in furtherance excused other witness alike Sergeant Charles W. Hannigan as to C.O. S. White by ( Lt. Polak) during plaintiff line of questioning over plaintiff "objections". Also, its is submitted that an impartial fact finder would perceive the need to allow plaintiff to introduce the allege evidence that was placed in a "contraband locker" as part of this allege *"grievance/claim interview"* of commissary goods as stated upon both Sergeant Charles W. Hannigan and C.O. S. White misbehavior reports (with requisition and invoice sheets) into the records at plaintiffs hearing, of Lt. Polak's as well as Lt. Dixon hearing to demonstrate that none of the serial numbers or lock numbers were part of the commissary items purchased on the commissary buy sheet submitted at the hearing of Lt. Polak. But rather instead Lt. Polak, put extreme limitations upon the range of allowing

16.

question(s) posed to the plaintiff requested witnesses as to (Sergeant Charles W. Hannigan) and then destroyed the allege commissary products prior to and  before the conclusion to (Lt. Dixon) hearing of plaintiff (evidence hindering). This was in fact all, ( evidence hindering) of the same events upon both  Sergeant Charles W. Hannigan, and C.O. S. Whites misbehavior reports, which should've been preserved for (review) of plaintiffs second hearing by Lt. Dixon.

30. Which is  concurrent to the same events and circumstances that led to the allegations and charges that plaintiff is being accused of but however, were *"destroyed"* by (Lt. Polak)  on November 29, 2007 arbitrarily; before the conclusion of the second hearing and of the witnesses(s) and thus before hearing officer Lt. Dixon review.  Or even prior to plaintiffs appeal to Albany and in arbitrarily of being found guilty of all charges rendered November 29, 2007 by Lt. Polak (See Exhibit A•14 hearing ~~disposition~~ of pages (2) special instruction part *"confiscated and destroyed items"*. Which violated plaintiff due process of relevant evidence to this hearing and of plaintiff second hearing by (Lt. Dixon.)  On this point it is submitted that the hearing officer Lt. Polak plainly erred in destroying relevant evidence relied upon prior to Lt. Dixon review or of the Albany review by the plaintiff's appeal.

31. Plaintiff  appeal was modified by N. Bezio from Albany of  Special Housing/inmate disciplinary program. In which 105.12 was *"dismissed"* (unauthorized organization activity); one out of 2 charges plaintiff was

17.

erroneously found guilt by Lt. Polak on November 29, 2007. However, 107.20 (false statements ) was sustained in plaintiff appeal to Albany from N. Bezio, yet contrary and inconsistent of said judgment by director N. Bezio in concurrent to the (same) events and circumstances that had been partial of the same charges in a separate misbehavior on the same charges by Sergeant Charles W. Hannigan as in (C. O. S. White misbehavior report) stemming from the same acts in a latter appeal to Albany of Director N. Bezio that had in fact been *"reversed"* in totality. That in furtherance to the contrariness  such charge 105.12 that was *"dismissed"* by Albany Director N. Bezier. See Exhibits A•2 (disposition by plaintiff appeal).  Plaintiff is still thus to this day held liable and penalized of such charges 105.12 of having to inconceivably pay a thirty dollar $30.00 restitution of  a charge that is deemed *"dismissed"*. See Exhibit A•2 copy of decision by a Electronically type disposition from Albany (N. Bezio) dismissed January 30, 2008. However, plaintiff has written several formal letters to Captain K. Brown and N,.Bezio,  from Albany who dismissed such charge. However, in plaintiff many letters to possibly rectify this plain error of not being reinbursed of the thirty dollar restitution. Finally on  4-17-08 plaintiff did receive retribution return of monies taken out of his account for charges 105.12 to such charges being dismissed by Albany. See Exhibit A•2; H•1-10 of letters and grievance(s) that were sent  and filed concerning such matter.

18.

32. The plaintiff contends that both Lt. Polak and ( Lt. Dixon) conducting plaintiff superintendent hearings of the incident of November 17, 2007 upon 36 Company (day room) Which was fabricated and motivated by a desire on the part of Attica officials to retaliate against plaintiff for the very grievance and claim they (Sergeant Charles W. Hannigan) and C.O. S. White came to interview plaintiff on upon 36 company dayroom.

33. Both Lt. Polak and Lt. Dixon conducted plaintiff separate Superintendent hearings on November 21, 2007 and November 23, 2007, preventing plaintiff from mounting his defense in violation of DOCS own rules as well as the basic requirement of due process; and in furtherance  with more specificity of the Superintendent hearing conducted by Lt. Dixon against plaintiff November 23, 2007.  It is urged the insufficiency of the basis for the hearing officer (Lt. Dixon) stemmed from his refusal to honor plaintiff request to relevant documentary evidence as alike (Lt. Polak) and his failure to call plaintiff's requested witnesses as alike, Lt. Polak  of I.G. investigator (Mr. Strough) IGP Superior (Mr. Struebel) Superintendent  James Conway, Lt. Bea; Deputy Chappius and R.N. Ms. Esposito. Concerning Lt. Dixon failure to call plaintiff witnesses (Superintendent James Conway)  investigator Mr. Strough and Lt. Bea all whom were actively investigating the events and circumstances that occurred upon plaintiff November 17, 2007. It should first be noted that the hearing officer(s)

19.

erred in denying plaintiff (6) witnesses as requested. On the grounds (contrary) to Lt. Dixon quote on the record of proceedings that these (6) witness would be indirect at best and would be redundant at best. See Exhibit B•6-7 (form(s) 2176) and A•15.

34. However, contrary to  such statement on the record of Lt. Dixon (refusal) to plaintiff's requested witnesses. They would have direct knowledge and insight to such investigation and to give testimony concerning the missing commissary items and the actions they took in that matter to include not limited to, (1) the inspector general findings of the allege missing commissary? (2). The physical and sexual assault sustained against plaintiff by Sergeant Charles W, Hannigan, C.O. White and John Doe correctional officers of Attica Corrections Facility (in their attempt) to extract plaintiff to relinquish any (refund) given to him by the state of losing plaintiffs commissary. See Exhibit I•1 refund receipt's. (3) as well as who contacted the inspector general to investigate the matter,  authorized by Lt. Lambert to re-open this investigation despite of  the fact that plaintiff was refunded his $70.75 for lost commissary and the grievance and claim of the above mention were closed? (5).   The results of Sergeant Charles W. Hannigan investigation of November 17, 2007 and whether these alleged items was the purchase items from the commissary purchase from the October delivery and what invoice were these from?  (6), R.N. Esposito visual examination of plaintiff injuries and written console?

20.

35. It is respectfully submitted that Lt. Dixon determination is not supported by substantial evidence as well as (LT. Polak) hearing conducted against plaintiff November 21, 2007, also see statement of evidence relied upon by disposition of Lt. Dixon Exhibit B•4. Plaintiff was erroneously convicted of (Sergeant Charles W. Hannigan) stating on record of proceedings plaintiff grabbed his Sergeant Charles W. Hannigan left hand preventing him from leaving for no apparent reason?

36. Also, review misbehavior report by Sergeant Charles W. Hannigan written against plaintiff in which he states incident occurred at 6: 45 pm in which plaintiff was locked in 36 Company shower. However, contrary to C.O. S. White misbehavior report written against plaintiff C.O. S. White *"states"* plaintiff was outside of his cell standing upon search answering questions at 7:30 on the same day? A review of hearing proceedings of testimony by plaintiff witnesses on record tapes 07-1732 and 1733 indicated C. O. White testified he didn't know where Sergeant Charles W. Hannigan escorted plaintiff upon *"interview"* November 17, 2007. See Exhibit B•2 Sergeant Charles W. Hannigan misbehavior report stating he turned towards C.O. S. White. However C. O. S. White states he didn't see plaintiff assault Sergeant Charles W. Hannigan.

37. Plaintiff objected to his assistance and thus not being provided and/or denied log book entries of the grievance investigation that was authorization by the (Superintendent James Conway) to Sergeant Charles W. Hannigan giving him authorization by the Superintendent to

21.

investigate this. C.O. S. White and Sergeant Charles W. Hannigan state in (both) of their misbehavior reports against plaintiff that it was a "grievance and claim interview investigation". See both misbehavior reports by C. O. S. White and Sergeant Charles W. Hannigan, Exhibit A•11 and B•2. Furthermore, plaintiff wasn't given the log book entries of (who) gave

Sergeant Charles W. Hannigan authorization of an on going investigation that was already indeed concluded upon and closed. See Exhibit I•1-2.

38. Also plaintiff objected to the tier hearing officer (Lt. Dixon) interviewing plaintiff witnesses outside plaintiff presence because as he Lt. Dixon was informed plaintiff tier assistant was in error of not investigating anything either... ,of why one of plaintiff witnesses decline to testify, and yet if plaintiff allowed Lt. Dixon to question plaintiff witnesses out of his presence it would be prejudicial (thus being already part of the record) because plaintiff had not had an opportunity to evaluate his witnesses questions and to decide whether or not plaintiff would want their testimony. Therefore, plaintiff requested another assistance to present his questions first to his witnesses, allowing plaintiff to decided whether or not he would want such testimony.

39. However, when plaintiff *"objected"* again hearing office Lt. Dixon then stated on record that he's gonna make his own determination and interview the witnesses and ask his own questions of witness "Mr. Prither" and "Mr. Pace" and report the results back to plaintiff. Plaintiff

objected again stating that it should be his assistance job to interview the witnesses. Lt. Dixon reiterated prejudicially stating then he would (Lt. Dixon) ask his own questions outside plaintiff presence and play that back for plaintiff. Which plaintiff stated *"how then would plaintiff be able who evaluate his witness answers first,"?* Furthermore plaintiff politely asked the hearing officer Lt. Dixon why is he (Lt. Dixon) cutting plaintiff off because plaintiff was trying to explain his reasons why.

40. Plaintiff again objected to his assistance respectfully  and his line which he would question witnesses out of his presence calmly ~~being~~ trying to explain his reason why. Plaintiff was then impermissibly dismissed from his hearing of its entirely. Review hearing tape 07-1732. The hearing office Lt. Dixon was rather abruptly continuously cutting plaintiff off of questions and  concerns which plaintiff voice never esculated to a level of disrespect or disruptive to be such a  threat to institution safely or correctional goals.  Review hearing tape. It is just another example of the hearing officer Lt. Dixon as alike (Lt. Polak) bias ways to discourage and stop plaintiff of exercising his constitutional rights.

41. Sergeant Charles W. Hannigan testified he got information from the commissary people that led him to believe plaintiff had certain items in his cell that plaintiff could only had gotten from the commissary buy on 10/17/07. In which C.O. S. White  conducted the search on 11/17/07 in which  moments later Sergeant Charles W. Hannigan arrived  on scene of C-Block 36 Company in which Sergeant Charles W. Hannigan, testifies C.O. S. White notified him that plaintiff had that material

commissary and gang material writing on the inside of plaintiff's cell wall. In which then Sergeant Charles W. Hannigan testifies he directed plaintiff to a day room. While conducting an interview of the allege commissary goods in which plaintiff stated other inmates had given him that stuff.

42. Sergeant Charles W. Hannigan then stated at that point, Quote: *"Well we going to have to take a look at your cell to find out about the gang related material"* **Unquote**; as he turned back to the day room contrary to his own misbehavior report, stated plaintiff allegedly grabbed his right hand (right wrist) right hand area with his plaintiff right hand. Then Sergeant Charles W. Hannigan states in contrary to that plaintiff instead grabbed his left hand with his right hand then he (Sergeant Charles W. Hannigan) immediately turned and grabbed ~~grabbed~~ plaintiff right hand with both his hands and put plaintiff's hands behind his back stating, we fell to the floor *"it was a fall more than anything else"*, **Unqoute!** Sergeant Charles W. Hannigan states he asked the plaintiff what was that about plaintiff stated *"I don't know"*.

43. Sergeant Charles W. Hannigan states him and plaintiff then stood up and he Sergeant Charles W. Hannigan put plaintiff in the shower completely contrary to his entire ticket (misbehavior report) , where Sergeant Charles W. Hannigan indicated upon written misbehavior report against plaintiff that he Sergeant Charles W. Hannigan turned towards C. O. S. White to get a description and then further stated that he (after falling) ordered plaintiff to *"stop resisting"?*

24.

44. Tier assistant corrections counselor testified he performed all the request plaintiff wanted him to cover and interviewed plaintiff witnesses. Tier assistance corrections counselor was questioned of his own tier assistances by Lt. Dixon and thus of his written report, which he states that plaintiff has requested a U.I on both incident(s) of the separate misbehaver reports written against plaintiff by Sergeant Charles W. Hannigan and C. O. S. White on November 17, 2007. Review hearing tapes.

45. But contrary, states on record that plaintiff didn't request for any U.I but rather corrections counselor assistance inconsistently testified that plaintiff told him to "leave". In addition to being complete inconsistent to plaintiffs testimony upon such tier hearing conducted by Lt. Dixon and of a documentary foil request by plaintiff submitted to tier officer (Lt. Dixon) prior to such.

46. Also, a review of hearing tapes 07-1733 reveal plaintiff witness (Mr. Phillip) 05-A-3573 C-36-8 cell upon such date time and approximate area of location of the physical and sexual assault sustained against plaintiff indicated " Mr. Prichter" agreed to testify, but then states on record of tier hearing proceedings against plaintiff that he don't know why plaintiff would even jeopardize his well being to come testify which such testimony is completely consistent to plaintiff version of the physical and sexual assault of retaliation by Sergeant Charles W. Hannigan, C. O. S. White and John Doe Correctional Officers of Attica

25.

because of plaintiff grievance claim filed and thus refunded for, See Exhibit s E•7-13 and F•5 photos left side of plaintiff face and injury reports to plaintiff genitals back and ribs.  Also a review of tier hearing tapes #07-1683, 071732 and 07-1733 reveal,  No. UI reports, No To and Forms (contrary to Lt. Dixon testimony)See Exhibit F•3-4 to and from by Lt. Bea to Capt. K. Brown concerning such incident. Watch commanders log books denied to plaintiff request to prepare his defense. SHU log books denied to plaintiff request to prepare his defense. Tape of the move denied to plaintiff request to prepare his defense; and demonstrate his innocence as it is evident that hearing officer Lt.Dixon as alike Lt. Polak had made their determination of guilty upon plaintiff without any consideration of documentary evidence or before plaintiff's appeal to Albany review.  Also, see Exhibit A•1-10 and B•I review of Superintendents hearing conducted by Lt. Dixon reversed February 28, 2008, by Albany Director N. Bezio, which erroneously  sustained plaintiff to a segregation to SHU approximately *3* and half months while awaiting his appeal and enduring the emotional physical and sexual assault sustained by Sergeant Charles W. Hannigan;  C. O. S White and John Doe Correctional officers by (Lt. Polak) and Lt. Dixon of the Superintendent James Conway hearing without any equal protection of due process.

47. In which also plaintiff wrote formal letters to Superintendent James Conway after immediately suspecting prior to the conclusion of both of plaintiff superintendent  hearing(s) conducted by Lt. Polak and (Lt.

Dixon) of the violation(s) that were being bestowed upon plaintiff constitutional rights by both Lieutenant(s) in conducting the Superintendent hearing in a conspiring attempt to silence plaintiff from exercising his constitutional rights.

48. In which plaintiff expressed his concerns through formal letters to Superintendent James Conway of Attica prior to the conclusion and disposition to both individual hearings conducted by Lt. Polak, and (Lt. Dixon) against plaintiff in which such letter(s) were acknowledged by Deputy Superintendent of Security Paul Chappius Jr.,   December 4, 2007, and forwarded back to Lt. Dixon of whom plaintiff (main) complaint was against. Plaintiff sent a copy of his formal letters to the director of Special Housing/inmate disciplinary in Albany upon such date and time of   forwarding  his complaint to Superintendent James Conway, dated November 26, 2007, See Exhibit B•8-12.

49. As it demonstrates the gross negligence and deliberate indifference to plaintiff from James Conway of Attica for failing to act on information of a unconstitutional practice which were taking place upon plaintiff. Also, see Exhibit D•8-12, in which plaintiff had forwarded letters to the New York State Police Department in Albany on November 20, 2007 and November 27, 2007, asking charges to be brought against Sergeant Charles W. Hannigan; C.O. S. white and John Doe officers(s) for subjecting plaintiff to a malicious retaliation in which Attica Correctional Officers inflicted a physical and sexual assault against plaintiff and segregation to SHU for exercising his constitutional rights.

27.

**THIRD CLAIM:**

**Plaintiff seeks the following relief:**

(a) Violation of due process rights by hearing officers;

(b) Malicious deprivation of liberty loss;

(c) Destroying of relevant evidence (by facility staff);

(d) Denial of plaintiff's to call on witnesses and or relevant documents;

(e) Conspiring to (biasly) find plaintiff guilty regardless of evidence;

(f) Unwarranted denial of plaintiff's presence during hearing;

(g) Emotional distress; and

Punitive damages in the amount of $250, 000

The Constitution basis for this claim under 42 U. S.C. 1983 is violation of plaintiff's I, IV, VIII, and XIV Amendments rights.

 Exhaustion of your administrative  remedies for this claim?  Plaintiff exhausted all his remedies as to this claim on February 29, 2008.


**FOURTH CAUSE OF ACITON**


FACTS:

50. On November 27, 2007 plaintiff sent formal letters to the New York state police in Albany and to district attorney Gerald L. Stout of Warsaw New York demanding criminal charges be brought against Sergeant Charles W. Hannigan and C.O. S. White of subjecting plaintiff to a conspired retaliation in causing injuries to plaintiff; See Exhibit J•1 and D•8-11 and D•12 documentation from the bureau criminal investigation (David L. Mc Nutty)

28.

acknowledging  receipt of plaintiff allegations, which were forwarded to the inspector general office of their jurisdiction.

51. Plaintiff sent formal letter dated December 30, 2007 and February 10, 2008 by certified return receipt mail to the inspector general office regarding incident thereto. See Exhibit J•2-12, in addition of plaintiff sending formal letters to the following dated January 15, 2008 and January 29, 2008, See Exhibit J•11-13. To former Honorable Eliot Sptizer Esq, dated December 20, 2007 by (certified return mail receipt).  See Exhibit M•1-7 and lastly plaintiff grievances in regards to incident(s) by Attica Officials conspiring attempt to discourage plaintiff from exercising his constitutional rights of tampering with plaintiff mail and originally denying plaintiff a transfer from Attica Correctional Facility,  to thus avoid any further  harm of retaliation by Attica officers and official(s) by the administration. See Exhibit 0•1-8. In which plaintiff had expressed through many attempts to his SHU counselor E. O'Mara and senior counselor D. O'Conner of Attica Correctional Facility of his imminent fears of having to be restored back to general population of Attica upon his release date of SHU of March 2, 2008 and of thus again being harmed and retaliated against.

52.  Both  counselor(s)  and  Superintendent  James  Conway  of  Attica Correctional Facility has clearly expressed through their many physical rounds of SHU prior to plaintiff release date that plaintiff would have to refuse to  be restored back to population and sustain a misbehavior report and more SHU time in order to be protected from Attica officers. Plaintiff grieved and thus appealed to IGRC opinion of his concerns to Superintendent James Conway in

29.

wanting to be transferred and thus safe to deter any more future retaliation due to such incident November 17, 2007, in which cause plaintiff harm. Superintendent James Conway expressed his decision denying plaintiff appeal stating their were  no valid reasons why plaintiff couldn't stay at Attica Correctional Facility upon his release after his SHU March 2, 2008 See Exhibit N•1-6. ⸺. Also see exhibit J•11-13 of formal letters by plaintiff dated January  15, 2008 and January 29, 2008 pleading with Superintendent James Conway and others prior to filing grievances.   However, contrary to such decision and allegations which were fabricated against plaintiff of 104.11 violent conduct, 100.11 assault on staff, 107.10 interference with staff and 107.20 false statements or information and thus sustaining plaintiff to a segregation unit SHU 3 and half months all of  plaintiff's charges were dismissed by an appeal to Albany from director N. Bezier February 29, 2008.

53. In addition to plaintiff being subsequently P.K. transferred March 7, 2008 to Auburn Correctional Facility, See Exhibit L•5. It should also be noted plaintiff still has residing pain to his lower back disc area and thus upon plaintiff initial immediate interview and subsequently being transferred to Auburn Correctional Facility and of currently being release from Attica SHU plaintiff notified Auburn medical staff approximate March 12, 2007 of a dormant  pain to his lower back which wasn't there prior to being physically and sexually assaulted by Sergeant Charles W. Hannigan; C. O. S. White, and John Doe Correctional Officers on November 17, 2007.

30.

54. Plaintiff has again requested of sick call of Auburn medical staff March 26, 2008 and immediately seen by a *Nurse* for a residing pain to his lower back in which plaintiff was again informed March 26, 2007 as well as upon his initial admission to Auburn Correctional Facility he is schedule to see a physician. See Exhibit E•7 medical record in which plaintiff was originally given ibuprofen with instruction given for pain to his lower back November 17, 2007 by Attica R.N. Mrs. Esposito who released a copy of plaintiff medical record without plaintiff consent and in furtherance falsified medical finding's of plaintiff injuries, of (whom) and in response to plaintiff grievance against R.N. Mrs. Esposito for malpractice sent to CORC indicates Mrs. Esposito subsequently no longer works for DOCS and was unavailable to provide a written statement, See Exhibit D•18.

55. On or about February 2008 plaintiff was taken to Rochester Strong Memorial Hospital in reference to his injuries sustained in the assault which occurred on November 17, 2007. Plaintiff was advised by a examining physician to be returned for a examination for his reproductive organ for possible reproductive damages; upon arriving to Auburn (medical staff) informed plaintiff that the (state) does not *"insure"* for such examination though the state DOCS, which were at fault for such injuries plaintiff sustained. plaintiff was only provided during the months of 4-7-08 thru 6-08 physical therapy for back pains. See Exhibit E•14. Also refer to initial incident occurring on 11-17-2007 nurses report Exhibit E•7.

31.

The Constitution basis for this claim under 42 U.S.C. 1983 is violation
of plaintiff rights under the U.S. Constitution of I, IV, VIII Amendment.
Exhausted of administrative remedies as to these claims were exhausted
and thus denied.

**FOURTH CLAIM**:
**Plaintiff seeks the following relief**:

(a) Failure to respond to plaintiff fear for his personal safety;
(b) Informing plaintiff his only way out of Attica Correctional Facility was
    by catching another disciplinary infraction;
© Failure as superior officer to train staff and to properly; instruct correct
or address plaintiff's concerns as to Correctional Staff misconduct; and
(d) Deliberate Indifference
    Nominal damages in the amount of $50,000 dollars.

32.

## CONCLUSION

Defendants named in the claims assaulted plaintiff to deprived plaintiff of his due process rights in justifying their assault and, defendants conspired throughout hearing proceedings in denying plaintiff of his essential right to be free of harm and the right to address wrongs done to him without the threat of retaliation  and medical staff confidentiality and further aided Correctional Officers (Defendants) to down play the injuries of plaintiff. Violation I, IV, VIII, and XIV Amendments rights under the United States Constitution, plaintiff seeks compensatory, punitive damages and nominal damages caused by pain and suffering totaling the amount of  $600,000;

For Compensation damages $200, 000;

Putative damages $350, 000; and

Nominal damages $50,000

Total of $600, 000  dollars, and also attorney  fee,  if and when applicable.

I declare under the penalty of perjury that the forgoing is true and correct signed this day _18_ of _Sept_ 2009.

Sworn and Subscribed
before me this day _18_ of _Sept_ 2009
_Audrie Abbott_
Notary of Public

_M. Delee - 07-B-0369_

ANDREA ABBOTT
Notary Public, State of New York
Qualified in Onondaga County
No. 01AB5074416
Commission Expires March 17, _2011_

Maurice Larry Delee#07B0369
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13024

33.