UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

MAURICE LARRY DeLEE,

|  |  |  |
|---|---|---|
|  | Plaintiff, | **REPORT** |
|  |  | **and** |
| v. |  | **RECOMMENDATION** |
|  |  |  |
|  |  | 09-CV-00838A(F) |

SEAN WHITE, DANIELLE ESPOSITO, RN,
JAMES LAMBERT, THOMAS DIXON,
ANTHONY POLAK, JEFFREY BEA,
SUPERINTENDENT JAMES CONWAY, PAUL
CHAPPIUS, NORMAN BEZIO, DEANNA
CARHART, WENDY PHILLIPS, CAPTAIN K.
BROWN, C.  LUNDQUIST, Assistant Inmate
Grievance Director, KAREN BELLAMY,
Director of Inmate Grievance, CHARLES M.
HANNIGAN, SIBATA KHAHFIA, EDWARD
O'MARA, DANIEL O'CONNOR, all in their
official and individual capacities,

                              Defendants.

─────────────────────────────────────

APPEARANCES:          ZDARSKY, SAWICKI & AGOSTINELLI
                                 Attorneys for Plaintiff
                                 GERALD T. WALSH, of Counsel
                                 404 Cathedral Place
                                 298 Main Street
                                 Buffalo, New York 14202

                                 ERIC T. SCHNEIDERMAN
                                 Attorney General, State of New York
                                 Attorney for Defendants White, Esposito,
                                   Lambert, Dixon, Polak, Bea, Conway,
                                   Chappius, Bezio, Carhart, Phillips, Brown,
                                   Lundquist, Bellamy, Khahfia, O'Mara, and
                                   O'Connor
                                 GEORGE MICHAEL ZIMMERMANN
                                 Assistant New York Attorney General, of Counsel
                                 Main Place Tower
                                 Suite 300A
                                 350 Main Street
                                 Buffalo, New York 14202

W. JAMES SCHWAN, ESQ.
Attorney for Defendant Hannigan
295 Main Street
Suite 700
Buffalo, New York 14203

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara, on

May 26, 2010, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motions to dismiss for failure to state a claim filed May 6, 2011 (Doc. No.

52), and September 8, 2011 (Doc. No. 61).

## BACKGROUND

Plaintiff Maurice Larry DeLee ("Plaintiff" or "DeLee"), then proceeding *pro se*,

commenced this civil rights action on September 25, 2009, alleging that while

incarcerated at Attica Correctional Facility ("Attica" or "the correctional facility") in Attica,

New York, Defendants, all employees of New York State Department of Corrections

("DOCS") then assigned to Attica, violated Plaintiff's civil rights by subjecting Plaintiff to

an unprovoked sexual assault, denying Plaintiff medical treatment for his injuries

sustained during the assault, filing two misbehavior reports falsely charging Plaintiff with

violating several prison rules, denying Plaintiff due process in connection with the

administrative hearing held in connection with the alleged false misbehavior reports,

resulting in Plaintiff's wrongful confinement in the correctional facility's special housing

unit ("SHU").

2

On September 3, 2010, Plaintiff moved to have counsel appointed and, by order filed September 21, 2010 (Doc. No. 34), the motion was granted with Gerald T. Walsh, Esq. ("Walsh"), appointed to represent Plaintiff.  On April 27, 2011, Plaintiff filed an amended complaint (Doc. No. 51) ("Amended Complaint"), naming as Defendants DOCS employees Sean White ("White"), Danielle Esposito ("Esposito"), James Lambert ("Lambert"), Thomas Dixon ("Dixon"), Anthony Polak ("Polak"), Jeffrey Bea ("Bea"), Attica Superintendent James Conway ("Conway"), Paul Chappius ("Chappius"), Norman Bezio ("Bezio"), Deanna Carhart ("Carhart"), Wendy Phillips ("Phillips"), Captain K. Brown ("Brown"), Director of Inmate Grievances Karen Bellamy ("Bellamy"), Assistant Inmate Grievance Director C. Lundquist ("Lundquist"), Charles M.  Hannigan ("Hannigan"), Sibata Khahfia ("Khahfia"), Edward O'Mara ("O'Mara"), and Daniel O'Connor ("O'Connor") (together, "Defendants"), all sued in their official and personal capacities.

Plaintiff alleges seven claims for relief, including (1) use of excessive force in violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments against Defendants Hannigan and White ("First Claim"); (2) maintaining and promoting a policy of abuse and failure to train against Defendants Conway, Lambert, Dixon, Polak, Bea and Brown ("Second Claim"); (3) violations of Plaintiff's civil rights under 42 U.S.C. § 1983 against Defendants Hannigan, White, and Carhart ("Third Claim"); (4) a New York common law assault claim against Defendants Hannigan and White ("Fourth Claim"); (5) failure to treat, failure to maintain the confidentiality of Plaintiff's medical records, and minimization of Plaintiff's injuries against Defendant Esposito, in violation of the

Eighth Amendment and federal HIPAA laws[1] ("Fifth Claim"); (6) denial of Fourteenth

Amendment due process in connection with the Tier III disciplinary hearings against

Defendants Polak, Dixon, Bezio, Bellamy, Brown, and Conway ("Sixth Claim"); and (7)

denial of due process in violation of the Fourteenth Amendment by failing to consider

Plaintiff's complaints and grievances regarding the assault, against Defendants

Chappius, Conway, O'Connor, and O'Mara ("Seventh Claim").

On May 6, 2011, a motion to dismiss the Amended Complaint[2] (Doc. No. 52),

was filed by Defendants Bea, Bezio, Carhart, Chappius, Conway, Dixon, Khahfia,

Lambert, O'Connor, O'Mara, Polak, and White ("First Moving Defendants") ("First

Moving Defendants' Motion").  The First Moving Defendants' motion is supported by the

attached Memorandum of Law in Support of Defendants' Motion to Dismiss (Doc. No.

52-1) ("First Moving Defendants' Memorandum").  On July 1, 2011, Plaintiff filed a

Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. No. 57)

("Plaintiff's First Response").  In further support of First Moving Defendants' motion,

First Moving Defendants filed on July 15, 2011 a Reply Memorandum of Law in Support

of Defendants' Motion to Dismiss (Doc. No. 58) ("First Moving Defendants' Reply").

On September 8, 2011, Defendants Phillips, Brown, Lundquist, and Bellamy

("Second Moving Defendants") filed a motion to dismiss (Doc. No. 61) ("Second Moving

Defendants' Motion"), supported by the attached Memorandum of Law in Support of

---

[1] References to "HIPAA" are to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, §§ 261-64 (Aug. 21, 1996).

[2] The court construes the denomination of the motion as a "Motion for Summary Judgment," as clerical or typographical error, given that Defendants seek relief under Fed.R.Civ.P. 12(6), do not rely on any evidence outside the pleadings in support of the motion, and the accompanying memorandum of law is denominated as "In Support of Defendants' Motion to Dismiss."

Defendants' Motion to Dismiss (Doc. No. 61-1) ("Second Moving Defendants'

Memorandum").[3] On October 14, 2011, Plaintiff filed the Memorandum of Law in

Opposition to Defendants' Second Motion to Dismiss (Doc. No. 66) ("Plaintiff's Second

Response"). To date, Second Moving Defendants have not filed any reply in further

support of the Second Moving Defendants' Motion. Oral argument was deemed

unnecessary.

Based on the following, First Moving Defendants' Motion should be GRANTED in

part and DENIED in part; Second Moving Defendants' Motion should be GRANTED in

part, and DENIED in part.


### FACTS[4]

On October 25, 2007, Plaintiff, then incarcerated at Attica Correctional Facility

("Attica" or "the correctional facility"), filed an inmate grievance claiming that funds in the

amount of $ 75.15 had been wrongly deducted from Plaintiff's inmate account for a

commissary goods order for which Plaintiff had refused to accept delivery because the

order contained goods Plaintiff did not request ("the commissary grievance"). The

commissary grievance was eventually resolved in Plaintiff's favor by Attica's Inmate

Grievance Review Committee ("IGRC"), and steward's office, with $ 75.15 refunded to

Plaintiff's inmate account. Nevertheless, at 6:30 P.M., on November 17, 2007, after the

commissary grievance had been resolved in Plaintiff's favor, Defendant White and non-

---

[3] To date, Defendant Hannigan, who is the only Defendant not represented by the New York Attorney General, has not moved to dismiss, but has filed an answer (Doc. No. 55), to the Amended Complaint.

[4] Taken from the pleadings and motion papers filed in this action.

parties Corrections Officer Matt Rodemacher ("Rodemacher") and other unidentified corrections officers, approached Plaintiff's cell, located in C-Block, 36 Company, Cell 12, to conduct a cell search, purportedly in connection with the resolved commissary grievance and investigation.  During the cell search, Plaintiff, at the direction of the searching officers, stood outside the cell while White located Defendant Hannigan, who soon arrived at the cell and instructed Plaintiff to follow White and other, unidentified corrections officers to the correctional facility's C-block 36 company "day room" which was closed during non-program hours.  Upon arriving at the day room, Hannigan instructed the 36 company control booth officer to open the day room's door and ordered Plaintiff to enter the day room.

Inside the day room, Hannigan produced a "memo" purportedly prepared by Defendant Corrections Lieutenant Officer James Lambert ("Lt.  Lambert"), authorizing Hannigan to search Plaintiff's cell for any items Plaintiff, in his commissary grievance, had denied receiving.  Hannigan then requested Plaintiff sign the memo, thereby relinquishing the funds that were restored to Plaintiff's inmate account in connection with Attica's IGRC's finding in Plaintiff's favor on the commissary grievance.  Plaintiff maintains that upon refusing to sign the memo, Hannigan, White and other unknown corrections officers, without any provocation from Plaintiff, proceeded to subject Plaintiff to a physical and sexual assault, attempting to coerce Plaintiff into signing the memo and relinquish his replenished commissary funds.  Plaintiff specifically claims Hannigan "brutally squeezed" Plaintiff's genitals, while White punched and kicked Plaintiff, and other corrections officers, including Defendant Deanna Carhart ("Carhart"), stood nearby and observed, but made no attempt to stop the assault.  Amended Complaint ¶¶

6

34-35.

Following the assault, which lasted approximately 20 minutes, Plaintiff was escorted from the day room and briefly secured in the 36 Company shower until Hannigan and White placed restraints on Plaintiff, led Plaintiff through the corridors of the correctional facility's C-Block to A-Block, where Plaintiff was placed in keep lock confinement in 10 Company, cell 29.  Plaintiff then made a request for medical attention which was ignored.  Twenty minutes passed and Plaintiff was again placed in restraints and led back through A-Block's corridors to the correctional facility's Special Housing Unit ("SHU"), where Plaintiff was placed.  Hannigan and White then filed two allegedly false Tier III inmate misbehavior reports ("the misbehavior reports")[5] in connection with the assault, the first charging Plaintiff with violating prison disciplinary rules 100.11 (attempted assault), 107.10 (interfering with staff), 107.20 (lying), and 104.11 (violent conduct) ("second misbehavior report") ("first misbehavior report"), and the second charging Plaintiff with violating prison disciplinary rules 105.12 (unauthorized organization display), 107.70 (providing false information").  The first misbehavior report was authored by Hannigan, and the second misbehavior report was authored by White.  Plaintiff maintains the misbehavior reports were filed to conceal that the reason Defendants assaulted Plaintiff earlier that day was to retaliate against Plaintiff for filing

---

[5] Copies of the misbehavior reports are submitted as Plaintiff's Exhibits filed May 20, 2010 (Doc. No. 14) at p. 27 ("first misbehavior report"), and p. 41 ("second misbehavior report"), for use in connection with this action.  Because the Amended Complaint refers to the First and Second Misbehavior Reports, they are incorporated by reference into the Amended Complaint and may be relied upon in considering Defendants' motion to dismiss.  *See Halebian v. Berv*, 644 F.3d 122, 130 n. 7 (2d Cir. 2011) ("it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon 'documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint.'" (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))).

the commissary grievance and for refusing to sign the memo repudiating the ordered return of Plaintiff's funds to his inmate account.

At 8:40 P.M. on November 17, 2007, Plaintiff, then housed in SHU, was examined by Defendant Danielle Esposito ("Esposito"), a registered nurse with Attica's medical staff.  Plaintiff maintains that Esposito falsely indicated in Plaintiff's medical records that Plaintiff had no swelling or bruising on the left side of his face upon his admission to SHU on November 17, 2007, despite the fact that photographs taken of Plaintiff at that time show to the contrary.  Plaintiff alleges he was hesitant to sign a medical document regarding Esposito's finding upon the examination because many corrections officers were present.  Plaintiff further maintains the presence of the corrections officers prevented Plaintiff from disclosing to Esposito that Plaintiff had been sexually assaulted by Hannigan, White, and others.[6]

At 9:00 A.M. on November 18, 2007, Esposito was making her morning rounds in SHU and Plaintiff, given the presence of only a few corrections officers, attempted to explain to Esposito the sexual nature of the physical assault Plaintiff had endured the previous evening, and requested to see a physician for treatment of injuries to his genitals.  Esposito denied the request, and Plaintiff allegedly was left in "excruciating pain."  Amended Complaint ¶ 68.  At 9:30 A.M. on November 18, 2007, Plaintiff made another request for medical treatment to Defendant Lieutenant Corrections Officer Jeffrey Bea ("Lt. Bea"), who was conducting rounds in SHU.  Lt. Bea order Plaintiff be removed from his SHU cell and re-examined in Attica's infirmary ("the infirmary") in

---

[6] It is not clear from the record whether any of the corrections officers allegedly present when Esposito examined Plaintiff were also present during the alleged sexual assault.

connection with Plaintiff's claimed injuries.  Prior to being escorted to the infirmary, however, Plaintiff provided Lt.  Bea with an oral statement describing the events and circumstances leading to the injuries for which Plaintiff was requesting medical treatment.  Lt.  Bea then instructed some unidentified corrections officers and the SHU sergeant ("the escorting SHU sergeant") to escort Plaintiff to the infirmary where, at 10:30 A.M. on November 18, 2007, Plaintiff was visually examined by Esposito who, at Lt. Bea's instructions and without Plaintiff's consent, released a medical document from Plaintiff's medical file to the escorting SHU sergeant, who gave the medical document to Lt. Bea.  Lt.  Bea then attached a copy of the medical document to a memorandum to Defendant Captain K. Brown ("Capt. Brown").

At 1:00 P.M. on November 19, 2007, Plaintiff was interviewed by one Mr. Strough ("Strough"), a representative of New York's Inspector General's office from Albany, New York, who is not a party to this action, regarding Plaintiff's injuries.  During the interview, Plaintiff described his injuries and signed a written complaint detailing the alleged physical and sexual assault by Hannigan, White and other unknown correctional officers.  At 1:42 P.M. and 1:48 P.M. on November 19, 2007, Plaintiff was served with copies of the two allegedly false misbehavior reports prepared by Hannigan and White. For each of the misbehavior reports, Plaintiff was assigned an inmate assistant to aid Plaintiff in defending against the charges.

At 9:00 A.M. on November 20, 2007, Plaintiff requested to be seen at sick call by a medical specialist for pain to his genitals and in his back.  Plaintiff made the same request at 9:00 A.M. the next day.

Plaintiff maintains that despite requesting each of the two assigned inmate

assistants to obtain certain, unspecified materials for Plaintiff's use in establishing his

defense to the two pending misbehavior reports, neither inmate assistant provided

Plaintiff with any of the requested materials.  On November 21, 2007, Plaintiff sought to

obtain through New York Freedom of Information Law ("FOIL")[7] and HIPAA requests

the materials his inmate assistants were unable to provide, but those requests were

denied.  Such requested materials included, *inter alia*, correctional facility log book

entries corroborating that the matter for which Hannigan had asserted he had been

authorized to conduct an investigation was already resolved, *i.e.*, Plaintiff's commissary

grievance, watch commander log books, SHU log books, and correctional facility

surveillance tapes of the incident.  Later that same day, a Tier III disciplinary hearing

("the first disciplinary hearing") commenced at the correctional facility before Defendant

hearing officer Polak in connection with the first misbehavior report.

At 9:00 A.M. on November 23, 2007, Plaintiff against requested to be examined by

a medical specialist for his injuries.  Later that same day, a Tier III disciplinary hearing

commenced before Defendant hearing officer Dixon with regard to the second

misbehavior report ("second disciplinary hearing").  Dixon refused to permit Plaintiff to

call Strough and Bea as witnesses on Plaintiff's behalf, stating the Dixon intended to

interview Plaintiff's witnesses outside Plaintiff's presence.

On November 27, 2007, Plaintiff was examined by Dr. Raul with regard to

Plaintiff's complaints of pain in his back and genitals, for which Dr.  Raul prescribed

Motrin (pain reliever) and Doxycycline (antibiotic used to treat urinary tract infections),

---

[7] References to "FOIL" are to N.Y. Public Officers Law § 84 *et seq.*, McKinney 2008.

which Plaintiff maintains made it difficult to walk without limping, and wash, and interfered with Plaintiff's sleep.  That same day, Plaintiff mailed letters to the New York State Police in Albany, New York, and to Wyoming County District Attorney Gerald L. Stout, in Warsaw, New York, demanding Defendants Hannigan and White be criminally charged in connection with the injuries Plaintiff sustained during the November 17, 2007 incident, asserting the assault was in furtherance of a conspiracy to retaliate against Plaintiff for exercising his constitutional right to file the commissary grievance. Plaintiff later sent similar letters to the inspector general's office in Albany, New York, and to former New York Governor Eliot Spitzer, accusing Defendants of assaulting Plaintiff, tampering with Plaintiff's mail, and denying Plaintiff's request to be transferred to a different correctional facility to avoid further harm, in order to retaliate against Plaintiff for exercising his constitutional rights

The first disciplinary hearing continued on November 29, 2007, at which time Defendant Polak allegedly repeatedly denied Plaintiff's attempts to submit documents in support of Plaintiff's defense, and limited Plaintiff's questioning of Hannigan, including arbitrarily disconnecting the telephone line over which Hannigan had been testifying during Plaintiff's questioning.  According to Plaintiff, he was not allowed to introduce into evidence the commissary products Defendants maintain were found in Plaintiff's cell during the November 17, 2007 cell search, despite the fact that such items were among those listed on the commissary order Plaintiff had refused to accept and for which Plaintiff's inmate account had been reimbursed.  Plaintiff alleges Hannigan testified that he conducted the search of Plaintiff's cell pursuant to a memo, which inmate records coordinator Sandra Prusak ("Prusak"), who is not a party to this action, testified did not

exist.  Plaintiff maintains the subject commissary products were confiscated and destroyed before the conclusion of the disciplinary hearing.  At the conclusion of the disciplinary hearing on November 29, 2007, Plaintiff was found guilty on both counts charged in the first misbehavior report, for which the disciplinary sentence imposed included 90 days in SHU confinement, 30 days loss of packages, commissary, and phone privileges, $ 30 restitution to be deducted from Plaintiff's inmate account, and confiscation of contraband items from Plaintiff's cell.

The second disciplinary hearing continued before Dixon on December 10, 2007. Plaintiff maintains Dixon stated Plaintiff's FOIL requests, made after Plaintiff's assistants failed to obtain the requested information, were "inadequate."  Plaintiff's Memorandum at 6.  Plaintiff further maintains that Dixon denied Plaintiff's requests to call pertinent witnesses involved in investigating the events of November 17, 2007, including the alleged physical and sexual assault, following which Plaintiff was placed in SHU.  At the conclusion of the second disciplinary hearing, Dixon found Plaintiff guilty on all four counts charged in the second misbehavior report.

On December 21, 2007, Plaintiff was taken to Wyoming County Hospital where he underwent an ultrasound examination of his testicles.  Following the ultrasound, Plaintiff was examined by Dr. Leskowski concerning residual pain to his genitals.

On December 24, 2007, Plaintiff requested a refill of his Motrin to relieve continuing pain.  Because the request was not addressed, Plaintiff repeated his request for a refill of his Motrin on December 26, 2007.  On December 28, 2007, Plaintiff's Motrin prescription was finally refilled.

On January 9, 2008, Plaintiff filed an inmate grievance challenging the

disciplinary hearing's disposition in which Plaintiff was found guilty on all four counts of the second misbehavior report, relying on Prusak's testimony that the memo pursuant to which Hannigan allegedly conducted the November 17, 2007 search of Plaintiff's cell did not exist.  The grievance, however, was denied by Attica IGRC Supervisor George D. Struebel on January 29, 2008.

On January 30, 2008, Defendant DOCS SHU/Inmate Disciplinary Program Director Bezio modified Polak's disposition on Plaintiff's first misbehavior report, dismissing the charged violation of Rule 105.12 for displaying symbols of an unauthorized organization, but upholding the charged violation of Rule 107.20, for providing false information.  Plaintiff maintains that although the disciplinary sentence imposed by Defendant Polak in connection with the first misbehavior report included restitution of $ 30 for the charged violation of Rule 105.12, the $ 30 deducted from his inmate account was never refunded following the dismissal of such count.

At the end of January or beginning of February 2008, Plaintiff, upon referral by Dr. Leskowski, was taken to Strong Memorial Hospital in Rochester, New York, and examined by a specialist regarding the injuries to Plaintiff's testicles allegedly sustained on November 17, 2007.  Plaintiff maintains that the examining physician advised Plaintiff to return for further examination and assessment of possible damage to his reproductive organs.

On February 29, 2008, Defendant Bezio reversed Dixon's disposition on Plaintiff's second misbehavior report, dismissing all four charged violations.  Plaintiff maintains he repeatedly expressed concerns to Defendants SHU counselor Edward O'Mara ("O'Mara"), and senior counselor Daniel O'Connor ("O'Connor"), that upon

being released from SHU on March 2, 2008, and returned to Attica's general prison population, Defendants would retaliate against Plaintiff for filing grievances by subjecting Plaintiff to further physical assaults.  According to Plaintiff, O'Mara, O'Connor, and Defendant Attica Superintendent James Conway ("Conway"), were aware of Plaintiff's desire to avoid being returned to Attica's general prison population and, absent being transferred to another correctional facility, the only way for Plaintiff to avoid being returned to the general prison population was to engage in conduct that would subject Plaintiff to another inmate misbehavior report and placement in SHU.

On March 7, 2008, Plaintiff was transferred from Attica to Auburn Correctional Facility ("Auburn").[8]  Upon such transfer, Plaintiff advised Auburn's medical staff that he had pain in his lower back resulting from the physical and sexual assault by Hannigan and White at Attica on November 17, 2007, and Plaintiff was informed he would be scheduled to see a physician.  Plaintiff repeated his medical complaints on March 12, 2008 and, on March 26, 2008, was scheduled to see a physician.  Between April and June 2008, Plaintiff received physical therapy treatment for back pain three times.

On April 8, 2008, Defendant Bezio reviewed his prior determination regarding the first misbehavior report, reversing the charged violation of Rule 105.12, and ordering Plaintiff's inmate account be reimbursed for the $ 30 in restitution previously deducted for the reversed violation.  Accordingly, all DOCS disciplinary rule violations with which Plaintiff was charged in the first and second misbehavior reports were eventually

---

[8] The record does not indicate why Plaintiff was transferred to Auburn on March 7, 2008, five days after his scheduled release from SHU, or whether the decision to transfer Plaintiff to Auburn was at all predicated on Plaintiff's repeated requests that such transfer was necessary for Plaintiff to avoid further assault by Defendants.

dismissed.

## **DISCUSSION**

Plaintiff maintains Defendants violated and conspired to violate his civil rights under 42 U.S.C. §§ 1983 and 1985, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Sections 1983 and 1985 are not, however sources of substantive rights but, rather, provide "'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  In the instant case, the Amended Complaint alleges Defendants engaged in various violations of Plaintiff's civil rights under the First, Fifth, Eighth, and Fourteenth Amendments by subjecting Plaintiff to physical and sexual assault to retaliate against Plaintiff for filing the commissary grievance, filing false misbehavior reports against Plaintiff to conceal the unwarranted assault, denying Plaintiff's procedural due process in connection the false misbehavior reports, and denying Plaintiff medical treatment for the injuries Plaintiff sustained during the assault.  Defendants have moved to dismiss many of Plaintiff's claims for which Defendants maintain Plaintiff seeks relief which cannot be granted.

Defendants specifically argue in support of moving to dismiss for failure to state a claim that (1) all claims asserted against Defendants in their official capacity must be

dismissed against Defendant state officials pursuant to the Eleventh Amendment; (2) Plaintiff's state common law tort claims against state officials may not be pursued in a federal action; (3) the Fourth Claim asserting a New York common law claim for assault against Hannigan and White can only be sued in New York's Court of Claims and, thus, must be dismissed; (4) the Sixth Claim alleging violations of due process in connection with the disciplinary hearings must be dismissed as against Defendants Chappius and Conway for lack of personal involvement; (5) the Seventh Claim alleging deliberate indifference to Plaintiff's medical needs must be dismissed for lack of personal involvement; and (6) the Seventh Claim must be dismissed with regard to events occurring after the alleged use of force against Plaintiff on November 17, 2007.  The Second Moving Defendants also seek dismissal on the basis that the Amended Complaint is untimely with regard to Defendants Phillips, Brown, Lundquist, and Bellamy.

In opposition to the motions to dismiss, Plaintiff argues that the Eleventh Amendment does not shield any Defendants from liability for any of Plaintiff's claims, that all of Plaintiff's claims are properly brought in this court, that the Complaint sufficiently alleges facts supporting all claims, and the claims against the newly added Defendants are timely because such claims relate back to the filing of the original complaint.  In further support of dismissal, Defendants maintain they are entitled to Eleventh Amendment immunity against all claims asserted against them in their official capacity, Plaintiff's New York common law tort claims are directed against New York and, as such, are improperly sued in this court, Plaintiff's Fourth Claim asserted against Defendants Hannigan and White must be brought in the Court of Claims, the Sixth

Claim must be dismissed as against Defendants Chappius and Conway for failure to allege personal involvement, and the Seventh Claims fails to allege deprivation of a liberty interest protected by the Due Process Clause.

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950). Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "To survive a motion to dismiss, a complaint must contain

17

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

1.      **Relation Back**

Preliminarily, the court addresses the argument of Second Moving Defendants (Bellamy, Brown, Lundquist, and Phillips), that because Plaintiff's § 1983 claims are subject to a three-year limitations period, and the alleged conduct forming the basis for Plaintiff's claims occurred between November 17, 2007 and March 2, 2008, such claims should have been asserted against them, at the latest, by March 2, 2011. Second Moving Defendants' Memorandum at 7. Further, because none of the Second Moving Defendants were named in the original complaint, the Amended Complaint does not relate back to the filing of the original complaint. *Id*. at 7-8. Plaintiff argues in opposition that the Amended Complaint does relate back to the original complaint in accordance with the Supreme Court's recent decision in *Krupski v. Costa Crociere, S.p.A.*, __ U.S. __, 130 S.Ct.  2485, 2492 & n. 2 (2010). Plaintiff's Second Response at 14-19.

Plaintiff does not deny that § 1983 claims are subject to a three-year limitations period. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, (2d Cir. 2004) (statute of limitations applicable to claim brought under § 1983 in New York is three years). Nor does Plaintiff deny that the original complaint does not mention the Second Moving

Defendants.  Rather, Plaintiff maintains that his failure to name the Second Moving

Defendants as defendants in the original complaint was the result of a mistake, and

because each of the Second Moving Defendants would have had constructive notice of

Plaintiff's claims against them, the claims newly asserted by the Amended Complaint

against the Second Moving Defendants relate back to the filing of the original complaint

and, as such, are not time-barred.  Plaintiff's Second response at 14-19.

Fed.R.Civ.P. 15(c) governs when an amended pleading will relate back to the

filing of the original pleading for statute of limitations purposes.  As relevant to the

instant case,

> An amendment to a pleading relates back to the date of the original
> pleading when:
>
>                * * * *
>
> (b) the amendment asserts a claim or defense that arose out of the
> conduct, transaction, or occurrence set out - - or attempted to be set out -
> - in the original pleading; or
>> (C) the amendment changes the party or the naming of the party
>> against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied
>> and if, within the period previously provided by Rule 4(m) for
>> serving the summons and complaint, the party to be brought in by
>> the amendment:
>>> (i) received such notice of the action that it will not be
>>> prejudiced in defending on the merits; and
>>> (ii) knew or should have known that the action would have
>>> been brought against it, *but for a mistake concerning the
>>> proper party's identity*.

Fed.R.Civ.P. 15(c)(1)(B) and (C) (italics added)

In the instant case, Second Moving Defendants neither contest nor concede that

Plaintiff's belatedly asserted claims against them arise out of the same conduct pleaded

in the original complaint, in satisfaction of Rule 15(c)(1)(B).  Rather, Second Moving

Defendants seek to dismiss the Amended Complaint as asserted against them on the

basis that the filing of the Amended Complaint on April 27, 2011, more than 3 years after the acts on which the asserted claims are predicated, and more than 120 days after the filing of the original complaint on September 25, 2009, *i.e.*, the time for service under Rule 4(m), expired, it is untimely as to Second Moving Defendants.  Second Moving Defendants' Memorandum at 7.  Second Moving Defendants further maintain the Amended Complaint does not comply with the requirement under Rule 15(c)(1)(C)(ii), *i.e.*, that, but for a mistake concerning the proper party's identity, the Second Moving Defendants knew or should have known the action would have been brought against them and, as such, the claims against the Second Moving Defendants are time-barred.  *Id*. at 7-8.

In support of its argument that Plaintiff's claims against the Second Moving Defendants must be dismissed as untimely, Second Moving Defendants rely on *Barrow v. Weathersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1995).  Second Moving Defendants' Response at 7-8.  As relevant, in *Barrow*, the Second Circuit stated

> Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

*Barrow*, 66 F.3d at 470.

In *VKK Corporation v. National Football League*, 244 F.3d 114 (2d Cir. 2001), also relied upon by Second Moving Defendants, the Second Circuit held that an amended complaint met the three requirements for an amended complaint to relate back to the timely filing of the original complaint including that (1) both complaints arose out of the

same conduct, transaction or occurrence, (2) the newly named defendant "was omitted from the original complaint because of a 'mistake concerning the identity of the proper party,'" and (3) the delay posed no prejudice to the newly added defendant who "'knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against' it."  *VKK Corp.*, 244 F.3d at 128 (quoting Fed.R.Civ.P. 15(c)(3)(B)).

In *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994), the Second Circuit held that Rule 15(c)(1)'s requirement "that a defendant 'knew' he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity."  *Cornwell*, 23 F.3d at 705.  Specifically,

> Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), *but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake*.

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1996) (italics added) It is significant that in *Barrow*, the Second Circuit held that Rule 15(c)'s requirements for relation back were not met where the plaintiff sought to substitute named defendants for "John Doe" defendants because the plaintiff was seeking to correct a lack of knowledge, rather than to correct a mistake regarding the defendants' identities.  *Id*. Put another way, where an amendment is sought to add new defendants, the amendment will not relate back to the filing date of the complaint, and thus avoid being time-barred, "if the newly-added defendants were not named originally because the plaintiff did not know their identities."  *Barrow*, 66 F.3d at 470.  Instead, where a plaintiff

seeks to add a defendant whom the plaintiff, although aware of the purported unlawful misconduct, was not required to sue, the plaintiff's failure to name the person as a defendant "must be a matter of choice, not mistake." *Robinson*, 23 F.3d at 705.

Recently, however, the Supreme Court granted *certiorari* "to resolve tension among the Circuits over the breadth of Rule 15(c)(1)(C)(ii)." *Krupski v. Costa Crociere, S.p.A.*, __ U.S. __, 130 S.Ct.  2485, 2492 & n. 2 (2010) (citing cases, including *Cornwell*, 23 F.3d 694, to demonstrate varying interpretations of Rule 15(c)(1)(C)(ii) among the circuits).  In *Krupski*, the plaintiff, a cruise ship passenger, brought an action seeking to recover for personal injuries sustained while aboard a cruise ship.  *Krupski*, 130 S.Ct. at 2490.  Although the back of plaintiff's ticket identified the correct carrier to be notified and sued in the event of a personal injury while on board one of its ships, the plaintiff sued the sales and marketing agent, listed on the front of the ticket and bearing a name very similar to the carrier who was the proper party to the action.  *Id*. at 2490-91.  After the applicable statute of limitations had expired, the incorrectly sued defendant advised the plaintiff of the identity of the correct defendant, and moved for summary judgment on that same ground, causing the Plaintiff, in opposing summary judgment, to move to amend the complaint to name the carrier as the defendant.  *Id*. at 2491.  The district court denied summary judgment and granted the plaintiff's motion to amend.  After the plaintiff filed the amended complaint correctly naming the carrier as the defendant, the defendant carrier moved to dismiss the amended complaint as untimely, contending the amended complaint could not relate back under Rule 15(c) because the plaintiff had delayed in moving to amend to name the correct defendant for months after being informed by the defendant agent that the carrier was the correct

22

defendant.  *Id*. at 2491-92.  The Eleventh Circuit Court of Appeals concluded that,

having been informed by the agent that the carrier was the proper defendant in the

agent's answer, the corporate disclosure statement listing the carrier as an interested

party to the action, and the summary judgment motion papers, plaintiff knew of the

proper defendant, yet delayed months in moving to file an amended complaint, thereby

indicating the plaintiff knew the proper defendant, yet chose to sue another party. *Id*. at

2492.

      The Supreme Court, in reversing the appellate court's decision, stated

> That a plaintiff knows of a party's existence does not preclude her from making a
> mistake with respect to that party's identity.  A plaintiff may know that a
> prospective defendant – call him party A – exists, while erroneously believing him
> to have the status of party B.  Similarly, a plaintiff may know generally what party
> A does while misunderstanding the roles that party A and party B played in the
> "conduct, transaction, or occurrence" giving rise to her claim.  If the plaintiff sues
> party B instead of party A under these circumstances, she has made a 'mistake
> concerning the proper party's identity,' notwithstanding her knowledge of the
> existence of both parties.  The only question under Rule 15(c)(1)(C)(ii), then, is
> whether party A knew or should have known that, absent some mistake, the
> action would have been brought against him.

*Krupski*, 130 S.Ct. at 2494.

Further, the Court specifically rejected the notion that the fact that a plaintiff is aware of

the existence of two parties, yet sues the wrong party, should be construed as

demonstrating the plaintiff chose to sue the wrong party, explaining that "[t]he

reasonableness of the mistake is not itself at issue.  As noted, a plaintiff might know

that the prospective defendant exists, but nonetheless harbor a misunderstanding

about his status or role in the events giving rise to the claim at issue, and she may

mistakenly choose to sue a different defendant based on that misconception.  That kind

of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii)

has been satisfied." *Id*.

Preliminarily, in the instant case, the original complaint is completely devoid of any allegation against Bellamy, Lundquist or Phillips.  Further, Plaintiff's sole allegation in the Amended Complaint against Defendant Wendy Phillips ("Phillips"), is that Phillips "is or was the Attica Correctional Facility Commissary Manager."  Amended Complaint ¶ 13.  Similarly, Plaintiff's sole allegations with regard to Bellamy and Lundquist is limited to identifying them in the Amended Complaint as, respectively, the Director and Assistant Director of DOCS's Inmate Grievances Program.  Amended Complaint ¶ 15. Significantly, none of the allegations in the original complaint against "unknown" or "John Doe" defendants can reasonably be construed as intended to be asserted against Bellamy, Lundquist, or Phillips.  In the absence of a single allegation against Bellamy, Lundquist, or Phillips, in either the original or Amended Complaint, it is not possible to find that the allegations in the Amended Complaint against Bellamy, Lundquist, or Phillips relate back to the filing of the original complaint.  Accordingly, Second Moving Defendants' Motion should be DENIED insofar as it seeks dismissal of claims asserted against Bellamy, Lundquist, and Phillip as time-barred.

With regard to Defendant Brown, Plaintiff alleges that Brown, as a DOCS Captain at Attica, encouraged and tolerated the alleged use of excessive force by being involved in investigating the alleged filing of false misbehavior reports against Plaintiff, failing to obtain treatment for Plaintiff's injuries, and participating in the alleged unauthorized disclosure of Plaintiff's medical records.  Amended Complaint ¶¶ 54-55, 69, 71, 114.  These allegations in the Amended Complaint match up with the original complaint's allegations including that in a memorandum to Brown, dated November 18,

2007, Lt. Bea related Plaintiff's description, upon being interview by Lt. Bea, of the events and circumstances by which Plaintiff came to be subjected to excessive force. Complaint ¶ 11. Attached to Lt. Bea's November 18, 2007 memorandum was a copy of Plaintiff's medical record. *Id*. Plaintiff also alleged Brown was one of the DOCS officers to whom Plaintiff wrote letters complaining that a $ 30 restitution charge was deducted from Plaintiff's account for a disciplinary charge that was dismissed. *Id*. ¶ 31. That the original complaint contains allegations against Brown establishing that Plaintiff's failure to name Brown at that time as a Defendant was a mistake.

Moreover, Brown was on notice of the claims Plaintiff intended to assert against him by December 1, 2010, when Plaintiff filed his motion seeking leave to file an amended complaint. Plaintiff's Second Response at 18. *See Krupski*, 130 S.Ct. at 2492 (finding Rule 15(c)(1)(C)(i)'s requirement of notice within the time to serve satisfied where party plaintiff sought to add as defendant had, based on service on agent of both parent and subsidiary, "constructive notice of the action and had not shown that any unfair prejudice would result from relation back."), and 2497, n. 5 (noting "[t]he Advisory Committee Notes to the 1966 Amendment [to Rule 15] clarify that 'the notice need not be formal.'" (quoting Advisory Committee's 1966 Notes 122)), and 2498 (observing that party the plaintiff sought to add as a defendant should have suspected the plaintiff had made a mistake when its own activities were described in the complaint that named another party as the defendant). *See also B.J.S. v. State Education Department/University of State of New York*, 2011 WL 3651051, at * 14 (W.D.N.Y. Aug. 18, 2011) (granting motion to amend to add new defendants where record established plaintiff, at the time the original complaint was filed, mistakenly

believed it was not necessary to name such defendants); *Abdell v. City of New York*, 2006 WL 2620927, at * 3 (S.D.N.Y. Sept. 12, 2006) (holding, in context of relation back under Rule 15, corporation counsel had notice of the unnamed defendant's identity because it was representing the unnamed defendant on related state claims of false imprisonment stemming from the same incident); and *Muhammad v. Pico*, 2003 WL 21792158, at * 20 (S.D.N.Y. Aug. 5, 2003) ("Under the constructive notice doctrine, 'the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[s] knew the additional defendants would be added to the existing suit.'" (quoting *Scott v. Coughlin*, 944 F.Supp. 266, 270 (S.D.N.Y. 1996))).

Nor can Plaintiff be faulted for waiting until December 1, 2010, less than three months after the undersigned granted Plaintiff's motion for appointment of counsel on September 21, 2010 (Doc. No. 34), to move to file the Amended Complaint bringing in Brown as a Defendant. Rather, the Supreme Court has held that a plaintiff's conduct during the Rule 4(m) period, here, 120 days, subsequent to filing a complaint, is relevant only to the prospective defendant's understanding as to whether the plaintiff initially made a "mistake concerning the proper party's identity." *Krupski*, 130 S.Ct. at 2496-97. According to the Court, Rule 15(c)(1)(C) "plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them. Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Id*. at 2496 (citing Rule 15(c)(1) ("'An amendment . . . *relates back*

. . . when' the three listed requirements are met" (emphasis in original)).

The record thus establishes that Plaintiff's failure to name Brown as a Defendant in the original complaint was a mistake, and that Brown had, by December 1, 2010 when Plaintiff filed the motion seeking leave to amend, received notice of the instant action such that he will not be prejudiced by defending the action on its merits, and knew or should have known that, but for a mistake in the proper party's identity, Plaintiff would have sued Brown in the original complaint.

As such, the Second Moving Defendants' motion, insofar as it seeks to dismiss the Amended Complaint as time-barred because the claims asserted against Defendant Brown do not relate back to the filing of the original complaint, should be DENIED, but should be DENIED insofar as Plaintiff has failed to allege any facts against  Bellamy, Lundquist, and Phillips, other than to identify such Defendants' positions within DOCS, rendering a determination as to whether claims asserted in the Amended Complaint relate back to the filing of the original complaint for statute of limitations purposes unnecessary.

## 2.      Eleventh Amendment Immunity

Defendants maintain the Eleventh Amendment renders them immune from liability on all claims for monetary damages, including those based on constitutional violations, brought against them in their official capacities as DOCS employees.  First Moving Defendants' Memorandum at 6-7; Second Moving Defendants' Memorandum at 6.  In opposition, Plaintiff asserts he has sued Defendants in their official capacity "to obtain prospective non-monetary relief from the court."  Plaintiff's First Response at 21.

In further support of their respective motions, Defendants concede that the Eleventh

Amendment does not prohibit claims against Defendants in their official capacity for

purely injunctive relief, as opposed to monetary damages, but assert that nowhere in

the Amended Complaint has Plaintiff requested injunctive relief.  First Moving

Defendants' Reply at 2.  Rather, the Amended Complaint seeks only money damages

and, as such, all official capacity claims against Defendants must be dismissed. *Id*. at 2-

3.

        The Eleventh Amendment states, "[t]he judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by citizens of another state, or by the citizens or

subjects of any foreign state."  U.S. CONST. amend XI.  "Although the text of the

[Eleventh] amendment speaks only of suits against a state by persons who are not

citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to

extend to suits by all persons against a state in federal court."  *Mancuso v. New York

State Thruway Authority*, 86 F.3d 289, 292 (2d Cir. 1996)  (quoting *Hans v. Louisiana*,

134 U.S. 1, 10-11 (1890)).  This proscription extends to suits based on constitutional

violations for money damages against individuals acting in their official state capacities.

*Davis v. New York*, 316 F.3d 93, 101 (2d Cir.  2002) (holding inmate plaintiff's claims for

damages against all individual DOCS employees sued in their official capacities are

considered claims against New York and, therefore, are barred by the state's Eleventh

Amendment immunity (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

Because "neither a state nor its officials acting in their official capacities are 'persons'

under § 1983," they are not subject to liability for deprivations of constitutional rights

under that statute.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity bars suits in law or equity, but "a plaintiff may sue a state official acting in his official capacity - notwithstanding the Eleventh Amendment - for 'prospective injunctive relief' from violations of federal law."  *In re Deposit Insurance Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  *See also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (when a plaintiff sues a state official alleging violation of federal law, the court may award an injunction directed to future conduct, but not retroactive monetary relief).  Further, a federal court's grant of injunctive relief against a state official in his official capacity may not be based on a violation of state law.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984).

Thus, under established law, insofar as Plaintiff brings federal claims under 42 U.S.C. §§ 1983 and 1985 against the individual state defendants, acting in their official capacities for monetary damages, as well as for injunctive relief under state law, such claims must be dismissed.  Such claims, however, survive insofar as Plaintiff seeks monetary relief against individual defendants in their personal capacities, and prospective injunctive or declaratory relief against individual defendants in their official capacities.  *Will*, 491 U.S. at 71 n. 10 ("a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Graham*, 473 U.S. at 167 n. 14)); *Edelman*, 415 U.S. at 677 (holding court may grant injunction to plaintiff suing state official for violation of federal law).

In the instant case, the Amended Complaint states Plaintiff "seeks damages for

Violations of Amendments I, IV, VIII and XIV under the United States Constitution, and

the common law, including compensatory, punitive damages and nominal damages

caused by pain and suffering totaling the amount of $ 600,000."  Amended Complaint at

27.  Significantly, the Amended Complaint contains no request for any other relief the

court finds appropriate or necessary.[9]  Although the Amended Complaint fails to

request any injunctive relieve, Plaintiff's papers opposing Defendants' motions specify

that he seeks to "obtain relief to put an end to prison policies condoning retaliation

when inmates complain about guard brutality."  Plaintiff's First Response at 21.  While a

blanket request for any other relief the court finds proper and necessary in the interest

of justice has been held to be a request for prospective injunctive relief with regard to a

*pro se* plaintiff's complaint, *see*, *e.g.*, *Gowins v. Greiner*, 2002 WL 1770772, at * 4, n. 4

(S.D.N.Y. 2002) (liberally construing *pro se* plaintiff's prayer for relief requesting

declaratory relief and "such other and further relief as the court deems necessary

and/or in the interest of justice" as seeking "prospective injunctive relief to the extent

that such relief may be available."), in the absence of any such request by Plaintiff, now

represented by legal counsel, the court may not award it.

     Moreover, injunctive or declaratory relief can only be awarded if the Plaintiff

establishes a likelihood that he will be injured in the future by the existence of an official

policy or its equivalent.  *See Peck v. Baldwinsville Central School District*, 351

Fed.Appx. 477, 479 (2d Cir. 2009) (denying plaintiff's request for declaratory and

prospective injunctive relief where plaintiff failed to point to any policy or custom or

---

[9] The court notes the original complaint was also devoid of any request for injunctive relief.

equivalent suggesting any defendant regularly violates students' free speech rights

(citing *Curtis v. City of New Haven*, 726 F.2d 65, 68 (2d Cir. 1984) (denying plaintiffs'

request for injunctive relief against city limiting police officers' use of mace to certain

specified conditions where defendant police officer's wrongful use of mace in arresting

plaintiffs was not authorized by any city policy and there was not showing plaintiffs were

likely to suffer future mace assault by police))).  Here, Plaintiff points to no policy or

custom, or the equivalent, suggesting that any Defendant regularly subjects prison

inmates to physical or sexual assault against any inmate who avails himself of DOCS

inmate grievance procedure, including Plaintiff.

Defendants' motion to dismiss Plaintiffs' claims against Defendants in their

official capacities should, on this ground, be GRANTED.

### 3.     New York Common Law Tort Claims

Defendants seek to dismiss all New York common law claims Plaintiff asserts

against them in their official capacities, including the claims for assault (Fourth Claim),

medical neglect (Fifth Claim), violation of medical confidentiality rights (Fifth Claim),

failure to comply with DOCS regulations (Sixth Claim), and violations of New York tort

law (Seventh Claim) on the basis that such claims may not be pursued in federal court.

First Moving Defendants' Memorandum at 7-8; Second Moving Defendants'

Memorandum at 11-12.  Plaintiff has not directly argued in opposition to this assertion,

but maintains that New York law does not bar § 1983 claims brought against DOCS

officers in their official capacities.  Plaintiff's First Response at 19.

It is settled that absent a waiver of its immunity, the Eleventh Amendment bars

claims against a state.  *Kentucky v.  Graham*, 473 U.S. 159, 165 (1985).  "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  *Id*.  (citing, 416 U.S. 232, 237-38 (1974)).  "Official capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id*.  at 165-66 (quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n.  55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).  "It is *not* a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself."  *Id*. (italics in original).  *See also  Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (holding a state's Eleventh Amendment immunity extends to state officials sued in their official capacities for money damages where the state is the real party in interest).

Accordingly, insofar as Plaintiff, in his Fourth, Fifth, Sixth, and Seventh Claims sues DOCS officials in their official capacities for money damages based on New York common law, negligence or failure to follow New York regulations, such claims should be DISMISSED.

**4.   Common Law Assault Claim**

First Moving Defendants alternatively assert that the Fourth Claim for assault

under New York common law must be dismissed as against White[10] in his personal

capacity because N.Y. Correct. Law § 24 ("§ 24")[11] permits actions under state law

against corrections officers, including Defendant White, and other DOCS employees

only in the Court of Claims, but does not bar claims under § 1983 and other federal

statutes.[12]  First Moving Defendants' Memorandum at 8-9.  Plaintiff does not directly

oppose this argument, maintaining instead that § 24 does not preclude claims against

DOCS officials occurring during the course of their of employment, yet "wholly outside

their scope of employment. . . ."  Plaintiff's First Response at 19.  In further support of

the First Moving Defendants' Motion, First Moving Defendants argue that Plaintiff has

misconstrued Rule 24.  First Moving Defendants' Reply at 4-5.

      As relevant to the instant case, § 24 provides

   1.    No civil action shall be brought in any court of the state . . . against any
         officer or employee of the department . . . in his or her personal capacity,
         for damages arising out of any act done or the failure to perform any act
         within the scope of the employment and in the discharge of the duties by
         such officer or employee.

   2.    Any claim for damages arising out of any act done or the failure to
         perform any act within the scope of the employment and in the discharge
         of the duties of any officer or employee of the department shall be brought
         and maintained in the court of claims as a claim against the state.

N.Y. Correct.  Law § 24[1] and [2].

----

[10] Although First Moving Defendants seek to dismiss the Fourth Claim as alleged against Defendants White and "Harris," First Moving Defendants' Memorandum at 8, Plaintiff has not named "Harris" as a defendant to this action, and Plaintiff's Fourth Claim is alleged only against Defendants White and Hannigan.  Hannigan, however, is not represented by the New York Attorney General, and has not separately moved to dismiss for failure to state a claim.  Accordingly, the court addresses First Moving Defendants' Motion only with regard to White.

[11] References to § 24 are to McKinney 2003.

[12] The court notes the Second Moving Defendants have not moved to dismiss on this ground.

"It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco*, 119 F.3d 183, 186-87 (2d Cir. 1997) (citing cases). "Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." *Id*. at 187. Section 24's "protection has been provided to permit correction officers to perform the demanding task of maintaining safety and security within correctional facilities 'undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function.'" *Id*. (quoting *Arteaga v. State*, 527 N.E.2d 1194, 1200 (N.Y. 1988)). Nevertheless, if a correctional officer's conduct falls outside the scope of employment for purposes of employer liability under the doctrine of *respondeat superior*, that same conduct is not entitled to immunity under § 24. *Ierardi*, 119 F.3d at 187 (holding because correctional officer's purported sexual harassment of co-worker was not undertaken in discharge of officer's duties, such conduct was outside scope of employment and thus beyond § 24's protection). *See Woodward v. State of New York*, 805 N.Y.S.2d 670, 673 (3d Dept. 2005) ("If, however, the DOCS officer's conduct is a breach of an individual duty and not in the exercise of an official governmental function, then the State is not the real party in interest and section 24 is not applicable."), *lv. dismissed* 845 N.E.2d 1276 (N.Y. 2006)).

The Supreme Court has recently held that insofar as § 24 relegates prison inmates' § 1983 claims to the New York Court of Claims, it is inconsistent with the Supremacy Clause and, thus, unconstitutional, *Haywood v. Drown*, 556 U.S. 729, ___,

129 S.Ct. 2108, 2117-18 (2009).  Although not addressed by the Second Circuit Court of Appeals, district courts within the Second Circuit have consistently construed *Haywood* as not precluding federal district courts from entertaining state law claims against DOCS officials pursuant to pendent jurisdiction.  *See, e.g., Brown v. Department of Correctional Services*, 2011 WL 2182775, at *8 (W.D.N.Y. June 2, 2011) ("Although the Supreme Court held § 24 unconstitutional insofar as it barred federal § 1983 claims in state court, the issue in the instant case, *i.e.*, whether § 24 precludes Plaintiff's proposed New York common law claims in this court, was not before the Supreme Court in *Haywood* and, thus, was not addressed."); *Joy v. New York*, 2010 WL 3909694, at * 4 (N.D.N.Y. Sept. 30, 2010) ("Although the *Haywood* decision found section 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under section 1983 - a federal statute."); *Blanche v. Pirelli*, 2009 WL 2499737, at * 8 (S.D.N.Y. Aug.  7, 2009) ("The Supreme Court, [in Haywood] did not hold that N.Y. Corr. § 24 is unconstitutional in its bar of state claims in state courts; it only held that state courts must be open to § 1983 federal claims." (bracketed material added)); *Crump v. Ekpe*, 2010 WL 502762, at * 18 (N.D.N.Y. Feb. 8, 2010) (recommending inmate plaintiff's state law claims be dismissed as precluded by § 24). As such, Plaintiff's Fourth Claim should be dismissed as against White insofar as it alleges damages based on any act or failure to act within the scope of White's employment and discharge of his official duties, the issue to which the court now turns.

Although the assaultive conduct to which Plaintiff alleges Defendants Hannigan and White subjected Plaintiff occurred during the course of Defendants' employment, a plain reading of the allegations establishes that the conduct, if it occurred, was not

within the scope of Defendants' employment.  In particular, Plaintiff alleges Defendants

White and Hannigan, to retaliate against Plaintiff for filing the commissary grievance,

acted with "actual malice toward plaintiff and with wilful and wanton indifference to and

deliberate disregard for human life and the rights of plaintiff" in subjecting Plaintiff to

"unprovoked beatings, verbal abuse and non-deadly force. . .  " including sexual

assault, punching and kicking Plaintiff.  Amended Complaint ¶¶ 35, 40, 60, 62.

Assuming, as required on a Rule 12(b)(6) motion to dismiss, the plaintiff's allegations

are true and construing such allegations in the light most favorable to the plaintiff,

*Scheuer*, 416 U.S. at 236; *Goldstein*, 516 F.3d at 56, a reasonable jury could find

White's conduct was not within the official scope of his duties, such that § 24 does not

shield White from liability for the assault claim, and Plaintiff's Fourth Claim states a

plausible claim for relief.  *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1949.  *See Murray v. Reif*,

828 N.Y.S.2d 669, (3d Dept. 2007) (holding correction officer's alleged actions in

assaulting and threatening inmate, reading inmate's legal mail without permission, and

importuning other correction officers not to feed inmate while inmate was housed in

SHU, did not fall within scope of official duties such that § 24 did not bar inmate's suit

for assault).

Accordingly, in the instant case, First Moving Defendants' Motion should be

DENIED insofar as it seeks dismissal of Plaintiff's Fourth Claim alleging common law

assault under New York law against White in his personal capacity.


5.    **Lack of Personal Involvement**

First Moving Defendants move to dismiss the Sixth Claim as against Defendants

Chappius and Conway for failure to allege any personal involvement in the asserted

due process violations by Chappius or Conway.  First Moving Defendants'

Memorandum at 9-10.  Similarly, Second Moving Defendants move to dismiss all claims

as against Defendants Bellamy, Lundquist, and Phillips on the basis that Plaintiff has

failed to allege any personal involvement by these Defendants in the asserted

constitutional deprivations.  Second Moving Defendants' Memorandum at 11.  Finally,

First Moving Defendants move to dismiss the Seventh Claim insofar as it asserts

Defendants were deliberately indifferent to Plaintiff's medical needs, in violation of the

Eighth Amendment, on the basis that none of the Defendants against whom such claim

is asserted is alleged to be a medical provider.   First Moving Defendants'

Memorandum at 11-12.

### A.      Defendants Chappius and Conway

As stated, First Moving Defendants move to dismiss the Sixth Claim as against

Defendants Chappius and Conway for failure to allege any personal involvement in the

asserted due process violations by Chappius or Conway with regard to Plaintiff's

disciplinary hearings.  First Moving Defendants' Memorandum at 9-10.  In opposition,

Plaintiff assets that he "sufficiently alleges that supervisory officials denied the plaintiff

his right to call witnesses and to provide evidence at disciplinary hearings conducted or

supervised by such officials, resulting in retaliatory charges which ultimately were

determined to be unfounded."  Plaintiff's First Response at 23.  In further support of

dismissal, First Moving Defendants reiterate that Plaintiff's Sixth Claim fails to allege

any personal involvement by either Chappius or Conway.  First Moving Defendants'

Reply at 6-7.

It is axiomatic that a supervisor cannot be held responsible for a § 1983 violation under the doctrine of *respondeat superior*; instead, a supervisory defendant must be alleged to have been personally involved in the violation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (supervisor liability in a § 1983 action requires that defendant was personally involved in the alleged constitutional violations and cannot rest on *respondeat superior*). Here, the Amended Complaint is devoid of any allegations that either Chappius or Conway was personally involved in the due process deprivations Plaintiff alleges occurred in connection with his disciplinary hearings. As such, First Moving Defendants' motion should be GRANTED with regard to Defendants Chappius and Conway.

### B.      Defendants Bellamy, Lundquist, and Phillips

Second Moving Defendants have moved to dismiss the Amended Complaint as against Bellamy, Lundquist, and Phillips for lack of personal involvement in any of Plaintiff's asserted claims. Second Moving Defendants' Memorandum at 9-10. Plaintiff's only argument in opposition is the bald statement that Bellamy and Lundquist are sued as "officials in charge of the inmate grievance process, which failed here" because Plaintiff was denied the right, during the disciplinary hearings which were the subject of the second inmate grievance, "to call witnesses and proffer evidence to defend himself in retaliation for his complaint alleging physical abuse." Plaintiff's Second Response at 3.

As discussed, Discussion, *supra*, at 24, Plaintiff's sole allegations against

Defendant Wendy Phillips ("Phillips"), is that Phillips "is or was the Attica Correctional Facility Commissary Manager."  Amended Complaint ¶ 13.  Similarly, Plaintiff's sole allegations with regard to Bellamy and Lundquist is limited to identifying them in the Amended Complaint as, respectively, the Director and Assistant Director of DOCS's Inmate Grievances Program.  Amended Complaint ¶ 15.

As stated, Discussion, *supra*, at 36, a supervisor cannot be held responsible for a § 1983 violation under the doctrine of *respondeat superior*; instead, a supervisory defendant must be alleged to have been personally involved in the violation. *Richardson,* 347 F.3d at 435.  Here, insofar as the Amended Complaint fails to allege that Bellamy, Lundquist, or Phillips had any personal knowledge of the alleged unconstitutional conduct to which Plaintiff claims he was subjected, the Amended Complaint fails to allege Bellamy and Lundquist were responsible for the alleged mishandling of any of Plaintiff's inmate grievances, or that Phillips, as manager of Attica's commissary program, was in any way responsible for the responsible for the alleged retaliation by Hannigan and White against Plaintiff for filing the commissary grievance which, by November 17, 2007, had been resolved in Plaintiff's favor.  In the absence of some allegation of personal involvement in any of the asserted unlawful conduct for which Plaintiff sues, Second Moving Defendants' Motion should be GRANTED with regard to Bellamy, Lundquist, and Phillips.

### C.       Deliberate Indifference to Medical Needs

First Moving Defendants have moved to dismiss the Seventh Claim insofar as it asserts deliberate indifference to Plaintiff's medical needs, specifically, the low back

39

pain Plaintiff experienced after being transferred to Auburn on March 7, 2008.  First

Moving Defendants' Memorandum at 11-12.  In particular, First Moving Defendants

argue that Plaintiff has failed to specify against which Defendants such claim is

asserted, or that such claim is asserted against any Defendants who are alleged to be

medical providers.  *Id*.  Plaintiff has not responded in opposition to this argument.

A plain reading of the Amended Complaint establishes that Plaintiff has failed to

identify any Defendant whom Plaintiff maintains was deliberately indifferent to Plaintiff's

low back pain while incarcerated at Auburn.  Plaintiff has thus failed to allege that any

Defendant was personally involved in the asserted Eighth Amendment violation.

Accordingly, Second Moving Defendants' Motion should be GRANTED as to this aspect

of Plaintiff's Seventh Claim.


**6.      Eighth Amendment Failure to Protect and Deliberate Indifference**

First Moving Defendants move to dismiss the Seventh Claim insofar as it alleges

Defendants failed to protect Plaintiff and were deliberately indifferent to Plaintiff's

medical needs in violation of the Eighth Amendment because Plaintiff has not alleged

that he suffered any injuries or harm resulting from a failure to protect or that any

injuries on which the Seventh Claim is predicated posed a serious medical need for

treatment.  First Moving Defendants' Memorandum at 12-13.  First Moving Defendants

specifically seeks to dismiss the allegations contained in ¶¶ 150, 151, 153, 155, 156,

158, 160, and 163 of the Amended Complaint, generally alleging Plaintiff sent letters to

various DOCS supervisors and elected officials complaining about the November 17,

2007 assault, alleged conspiracy, and failure to treat, and demanding that criminal

charges be filed against Defendants Hannigan and White.  *Id*. at 12.  In opposition,

Plaintiff asserts the Seventh Claim sufficiently states a claim for excessive force, but

does not otherwise address First Moving Defendants' Motion on this point.  Plaintiff's

First Response at 20-25.[13]  In further support of dismissal, First Moving Defendants

assert that Plaintiff has failed to reference any caselaw or statute establishing that the

allegations of Plaintiff's Seventh Claim support an Eighth Amendment failure to protect

or deliberate indifference claim.

The specific allegations First Moving Defendants seek to dismiss for failing to

support an Eighth Amendment failure to protect or deliberate indifference claim include

that (1) on November 27, 2007, Plaintiff sent letters various law enforcement agencies

"demanding criminal charges be brought against defendants Hannigan and White for

subjecting Plaintiff to a conspired retaliation and causing injuries to plaintiff. . . .",

Amended Complaint ¶ 150; (2) Plaintiff sent additional letters "regarding the incidents

alleged herein" to the inspector general's office, and then Governor Eliot Spitzer, *id.* ¶

151; (3) Plaintiff, on numerous occasions, expressed to his SHU counselor concerns

that upon release from SHU, Plaintiff would be returned to Attica's general prison

population where he would suffer harm and retaliation, *id.* ¶ 153; (4) Plaintiff grieved his

concerns that he would suffer harm and retaliation upon returning to Attica's general

prison population, but Plaintiff's grievance was denied, *id.* ¶¶ 155-56; (5) Plaintiff

continues to suffer pain in his "lower back disc area" and, upon being transferred to

Auburn on March 7, 2008, advised Auburn's medical staff of such pain, *id.* ¶ 158; (6)

---

[13] First Moving Defendants do not seek to dismiss the Amended Complaint's alleged Eighth Amendment excessive force claim.

Plaintiff was taken to Strong Memorial Hospital in Rochester, New York in "February 2008" for examination of the injuries Plaintiff sustained on November 17, 2007, *id.* ¶ 160; and (7) Plaintiff was only provided with physical therapy for his back pain for three months, *i.e.*, April 7, 2008 through June 2008, *id.* ¶ 163.  Based on these allegations, Plaintiff seeks damages against Defendants for (1) failing to respond to Plaintiff's fear for his personal safety; (2) advising Plaintiff the only way to avoid being returned to Attica's general prison population was to incur a further disciplinary sentence to SHU by committing another disciplinary infraction; (3) failing to properly train, instruct, correct or address Plaintiff's concerns regarding DOCS staff misconduct; and (4) "[d]eliberate indifference, in the amount of $ 50,000."  *Id*. ¶ 164.

As First Moving Defendants argue, these allegations fail to support an Eighth Amendment claim that any Defendant failed to protect Plaintiff from any harm, or was deliberately indifferent to any serious medical need.  Significantly, the Amended Complaint is devoid of any allegation that, as a result of such alleged conduct, Plaintiff was subjected to any violence, was injured or suffered any harm, much less any injury or harm sufficiently serious to constitute an Eighth Amendment violation.  Accordingly, First Moving Defendants' Motion, insofar as it seeks to dismiss Plaintiff's Seventh Claim asserting an Eighth Amendment violation based on failure to protect or deliberate indifference to a serious medical need while Plaintiff was incarcerated at Auburn, should be GRANTED.

## <u>CONCLUSION</u>

Based on the foregoing, First Moving Defendants' Motion (Doc. No. 52) should

be GRANTED in part and DENIED in part; Second Moving Defendants' Motion (Doc. No. 61) should be GRANTED in part, and DENIED in part.

Specifically, the undersigned recommends dismissal of (1) all claims, based on either federal statute or state common law, asserted against Defendants in their official capacity and seeking money damages because such claims are barred by the Eleventh Amendment; (2) all federal due process claims asserted against Defendants Chappius and Conway for lack of personal involvement; (3) all claims against Defendants Bellamy, Lundquist, and Phillips for lack of personal involvement; (4) all Eighth Amendment claims alleging deliberate indifference to Plaintiff's serious medical needs while Plaintiff was incarcerated at Auburn; and (5) Plaintiff's Eighth Amendment claims alleged against DOCS supervisory officials and elected officials alleging failure to protect and failure to treat based on the allegations contained in ¶¶ 150, 151, 153, 155, 156, 158, 160, and 163 of the Amended Complaint, generally alleging Plaintiff sent letters to the various DOCS supervisors and elected officials complaining about the November 17, 2007 assault, alleged conspiracy, and failure to treat, and demanding that criminal charges be filed against Defendants Hannigan and White.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 15, 2011
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    November 15, 2011
            Buffalo, New York