UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAURICE LARRY DeLEE                                        REPORT
                              Plaintiff,                        and
                    v.                                   RECOMMENDATION

CHARLES M. HANNIGAN, SEAN WHITE,               09-CV-00838A(F)
DANIELLE ESPOSITO, R.N., JAMES LAMBERT,
THOMAS DIXON, ANTHONY POLAK, JEFFREY
BEA, SUPERINTENDENT JAMES CONWAY,
SIBATA KHAHFIA, PAUL CHAPPIUS, EDWARD
O'MARA, DANIEL O'CONNOR, NORMAN BEZIO,
DEANNA CARHART, WENDY PHILLIPS, CAPTAIN
K. BROWN, C. LUNDQUIST, Assistant Inmate
Grievance Director, and KAREN BELLAMY, Director
of Inmate Grievance,

                              Defendants.
_____

APPEARANCES:        GERALD T. WALSH, ESQ.
                    Attorney for Plaintiff
                    404 Cathedral Place
                    298 Main Street
                    Buffalo, New York  14202

                    ERIC T. SCHNEIDERMAN
                    New York State Attorney General
                    Attorney for Defendants
                    GEORGE MICHAEL ZIMMERMANN
                    Assistant Attorney General, of Counsel
                    Main Place Tower, Suite 300A
                    350 Main Street
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

May 6, 2010, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on a

motion for partial summary judgment (Doc. No. 102), filed on July 12, 2013 by

Defendants Bea, Bezio, Brown, Carhart, Conway, Dixon, Khahaifa, Lambert, Polak, and
White.

## BACKGROUND

Plaintiff Maurice Larry DeLee ("Plaintiff" or "DeLee"), then proceeding *pro se*,
commenced this civil rights action on September 25, 2009, alleging that while
incarcerated at Attica Correctional Facility ("Attica" or "the correctional facility"), in Attica,
New York, Defendants, all employees of New York State Department of Corrections and
Community Supervision ("DOCCS"), then assigned to Attica, violated Plaintiff's civil
rights by subjecting Plaintiff to an unprovoked sexual assault resulting in injuries for
which Plaintiff was denied medical treatment, filing two false misbehavior reports
charging Plaintiff with several prison rule infractions, denying Plaintiff due process in the
ensuing administrative hearings on the misbehavior reports, causing Plaintiff to
wrongfully be found guilty of the transgressions charged in the misbehavior reports for
which Plaintiff was confined in the correctional facility's special housing unit ("SHU") for
90 days with attendant loss of privileges.  By order filed September 21, 2010 (Doc. No.
34), the undersigned granted Plaintiff's motion for appointment of counsel, assigning
Gerald T. Walsh, Esq. ("Walsh"), to represent Plaintiff.  On April 27, 2011, Plaintiff filed
an amended complaint (Doc. No. 51) ("Amended Complaint"), naming as Defendants
DOCCS's employees Charles M. Hannigan ("Hannigan"), Sean White ("White"), Deanna
Carhart ("Carhart"), Danielle Esposito, R.N. ("Esposito"),[1] James Lambert ("Lambert"),
Thomas Dixon ("Dixon"), Anthony Polak ("Polak"), Jeffrey Bea ("Bea"), Superintendent

---

[1] To date, Esposito has not been served.

James Conway ("Conway"), Sibatu Khahaifa ("Khahaifa"),[2] Paul Chappius ("Chappius"), Edward O'Mara ("O'Mara"), Daniel O'Connor ("O'Connor"), Norman Bezio ("Bezio"), Wendy Phillips ("Phillips"), Captain K. Brown ("Brown"), Assistant Inmate Grievance Director C. Lundquist ("Lundquist"), and Director of Inmate Grievance Karen Bellamy ("Bellamy"), all sued in their official and individual capacities (together, "Defendants"). Plaintiff alleges seven claims for relief, including (1) excessive force in violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments against Defendants Hannigan and White ("First Claim"); (2) maintaining and promoting a policy of abuse and failure to train against Defendants Conway, Lambert, Dixon, Polak, Bea, and Brown ("Second Claim"); (3) violation of Plaintiff's civil rights under 42 U.S.C. § 1983 ("§ 1983"), against Defendants Hannigan, White, and Carhart ("Third Claim"); (4) assault in violation of New York common law against Defendants Hannigan and White ("Fourth Claim"); (5) failure to treat and minimization of Plaintiff's injuries against Defendant Esposito, in violation of the Eighth Amendment, and failure to maintain confidentiality of Plaintiff's medical records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ("Fifth Claim"); (6) denial of Fourteenth Amendment due process in connection with the prison disciplinary hearing held on the alleged false misbehavior reports, asserted against Defendants Polak, Dixon, Bezio, Bellamy, Brown, and Conway ("Sixth Claim"); and (7) denial of Fourteenth Amendment due process by failing to consider Plaintiff's complaints and grievances regarding the assault against Defendants Chappius, Conway, O'Connor, and O'Mara ("Seventh Claim").

---

[2] Despite various spellings of this Defendant's name throughout the record, the court refers to this Defendant using the correct spelling of his name, *i.e.*, "Sibatu Khahaifa."

Motions to dismiss the Amended Complaint were filed on May 6, 2011, by

Defendants Bea, Bezio, Carhart, Chappius, Conway, Dixon, Khahaifa, Lambert,

O'Connor, O'Mara, Polak, and White (Doc. No. 52) ("First Motion to Dismiss"), and on

September 8, 2011, by Defendant Phillips, Brown, Lundquist, and Bellamy (Doc. No.

61) ("Second Motion to Dismiss").  In an order filed February 22, 2012 (Doc. No. 75)

("Feb. 22, 2012 Order"), Judge Arcara adopted the undersigned's Report and

Recommendation filed November 15, 2011 (Doc. No. 67) ("R&R"), recommending

granting in part and denying in part the First and Second Motions to Dismiss.  In

particular, Judge Arcara dismissed (1) all claims asserted against Defendants in their

official capacity and seeking money damages as barred by the Eleventh Amendment;

(2) all federal due process claims against Defendants Chappius and Conway for lack of

personal involvement; (3) all claims against Defendants Bellamy, Lundquist, and Phillips

for lack of personal involvement; (4) all Eighth Amendment claims alleging deliberate

indifference to Plaintiff's serious medical needs while Plaintiff was incarcerated at Attica;

(5) Plaintiff's Eighth Amendment claims against DOCCS's supervisory officials and

elected officials asserted in  ¶¶ 150, 151, 153, 155, 156, 158, 160, and 163 of the

Amended Complaint, generally alleging Plaintiff sent letters to various DOCCS's

supervisors and elected officials complaining about the November 17, 2007 assault, an

alleged conspiracy, failure to protect or to treat, and demanding the filing of criminal

charges against Defendants Hannigan and White.  R&R at 43.

On July 12, 2013, Defendants Bea, Bezio, Brown, Carhart, Conway, Dixon,

Khahaifa, Lambert, Polak, and White ("Moving Defendants"), filed the instant motion

(Doc. No. 102) ("Moving Defendants' Motion"), for partial summary judgment, supported

by the attached Memorandum of Law in Support of Defendants' Motion for Partial

Summary Judgment (Doc. No. 102-1) ("Moving Defendants' Memorandum"), and

Statement of Undisputed Facts in Support of Defendants' Motion for Summary

Judgment (Doc. No. 102-2) ("Moving Defendants' Statement of Facts"), as well as the

separately filed Declaration of Jeffrey Bea (Doc. No. 103) ("Bea Declaration"), with

attached exhibits A and B ("Bea Dec. Exh(s). __"); the Declaration of Norman Bezio

(Doc. No. 104) ("Bezio Declaration"), with attached exhibits A and B ("Bezio Dec.

Exh(s). __"); the Declaration of Kevin Brown (Doc. No. 105) ("Brown Declaration"), with

attached exhibits A and B ("Brown Dec. Exh(s). __"); the Declaration of Deanna Carhart

(Doc. No. 106) ("Carhart Declaration"), with attached exhibit A ("Carhart Dec. Exh. A");

the Declaration of James Conway (Doc. No. 107) ("Conway Declaration"), with attached

exhibit A ("Conway Dec. Exh. A"); the Declaration of Thomas Dixon (Doc. No. 108)

("Dixon Declaration"), with attached exhibit A ("Dixon Dec. Exh. A"); the Declaration of

Assistant Attorney General George Michael Zimmermann (Doc. No. 109)

("Zimmermann Declaration"), with attached exhibits A through C ("Zimmermann Dec.

Exh(s). __"); the Declaration of James Lambert (Doc. No. 110) ("Lambert Declaration"),

with attached exhibits A and B ("Lambert Dec. Exh(s). __"); and the Declaration of

Anthony Polak (Doc. No. 111) ("Polak Declaration"), with attached exhibit A ("Polak

Dec. Exh. A").

In opposition to Moving Defendants' Motion, Plaintiff filed on September 17,

2013, the Affidavit of Maurice Larry DeLee (Doc. No. 117) ("Plaintiff's Affidavit"),

supported by the attached exhibits 1 through 4 (Docs. Nos. 117-1 through 117-4), and

the separately filed exhibits 5 through 7 (Docs. Nos. 118 through 118-2); exhibit 8, Parts

1 and 2 (Docs. Nos. 119 through 119-1); exhibit 9A, Parts 1 through 4 (Docs. Nos. 120

through 120-3); exhibits 9B, 10 and 11 (Docs. Nos. 121 through 121-2), exhibit 12 parts

1 and 2 (Docs. Nos. 122 through 122-1), and exhibits 13 through 15 (Docs. Nos. 123

through 123-2) ("Plaintiff's Exh(s). __"), and the Memorandum of Law Opposing

Defendants' Motion for Partial Summary Judgment (Doc. No. 124) ("Plaintiff's

Memorandum").  In further opposition to Moving Defendants' Motion, Plaintiff filed on

September 18, 2013, Plaintiff's Rule 56 Statement in Opposition to Defendants'

Statement (Doc. No. 125) ("Plaintiff's Rule 56 Statement"), Plaintiff's Appendix of

Exhibits to Rule 56 Statement (Doc. No. 126); exhibit 16 (Doc. No. 127); exhibits 17

through 20 (Docs. Nos. 128 through 128-3); exhibits 21 through 23 (Docs. Nos. 129

through 129-2); exhibits 24 through 26 (Docs. Nos. 130 through 130-2); exhibits 27

through 29 (Docs. Nos. 131 through 131-2); exhibits 30 through 36 (Docs. Nos. 132

through 132-6); exhibits 37 through 42 (Docs. Nos. 133 through 133-5); and exhibits 43

through 48 (Docs. Nos. 134 through 134-5) (also referred to as "Plaintiff's Exh(s). __").

On October 18, 2013, Moving Defendants filed the Memorandum of Law in

Further Support of Defendants' Motion for Partial Summary Judgment (Doc. No. 136)

("Moving Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Moving Defendants' Motion should be GRANTED.

## FACTS[3]

The events relevant to this action occurred while Plaintiff Maurice Larry DeLee

("DeLee" or "Plaintiff"), was incarcerated at Attica.  Specifically, on October 25, 2007,

Plaintiff filed an inmate grievance claiming $ 75.15 had been wrongfully deducted from

---

[3] Taken from the pleadings and motion papers filed in this action.

his inmate account for an order of commissary goods Plaintiff never requested ("the

commissary grievance").   After the commissary grievance was resolved in Plaintiff's

favor, with $ 75.15 refunded to his inmate account, at 6:30 P.M. on November 17, 2007,

several corrections officers, including Matt Rodemacher ("Rodemacher"), and

Defendant White, pursuant to Defendant Hannigan's order, conducted a search of

Plaintiff's cell, *i.e.*, Cell 12 located on B-Block, 36 Company, while Plaintiff, at the

direction of the searching corrections officers, stood outside the cell.   During the cell

search, White found several items similar to those in the disputed commissary order,

including ear-bud headphones, a headphone adapter, a package of noodles, and an 8"

by 10" mirror, all of which Plaintiff maintains were given to him by other inmates.

Defendant Hannigan directed Plaintiff to follow him and other corrections officers to the

C-Block, 36 Company "day room."   After ordering Plaintiff to enter the day room,

Hannigan allegedly produced a "memo" prepared by Defendant Lambert authorizing the

search of Plaintiff's cell for any of the items Plaintiff, in the commissary grievance, had

denied receiving, and requested Plaintiff sign the memo based on Plaintiff's belief that

signing the memo would be tantamount to admitting Plaintiff had received the

commissary order at issue in the commissary grievance, whereby the $ 75.15 recently

refunded to his inmate account would have been relinquished.   Plaintiff alleges that

upon refusing to sign the memo, Hannigan, White, and other unidentified corrections

officers, absent any provocation by Plaintiff, proceeded to physically and sexually

assault Plaintiff for 20 minutes ("the assault"), during which Hannigan punched the left

side of Plaintiff's face, and grabbed and "brutally squeezed" Plaintiff's genitals and

White yanked and pulled on Plainitff's underwear, and kicked Plaintiff's lower back and

ribs while Plaintiff attempted to roll into a ball to protect himself from the blows. According to Plaintiff, other corrections officers, including Defendant Carhart, stood nearby watching the unprovoked assault, but failed to intervene to stop the assault. Following the assault, Plaintiff's request for medical attention was ignored and Plaintiff was first locked in the Block Shower before being moved to Attica's Special Housing Unit ("SHU").

Although DOCCS employees are required to complete a "Use of Force Report" in connection with any use of force against an inmate, Hannigan did not initially complete such a report until White reported the use of force to Lieutenant J. Gilmore who then directed Hannigan to write the report.  In a Use of Force Report dated November 17, 2007 ("Use of Force Report"),[4] Hannigan wrote Plaintiff had admitted to White being in possession of commissary material similar to that which Plaintiff had asserted in the commissary grievance he never received, and that White also noticed "a significant amount of graffiti in [Plaintiff's] cell," that was possibly gang-related.  Hannigan reported Plaintiff asserted the commissary items found in his cell were given to him by other inmates.  According to the Use of Force Report, Plaintiff provoked the use of force by grabbing Hannigan's left hand, and Hannigan responded by pulling Plaintiff's right arm behind his back and placing Plaintiff in a body hold until Plaintiff ceased resisting at which time Hannigan directed Plaintiff step out of the day room and lock into the Block Shower and Plaintiff complied.  Gilmore, in a memorandum to Chappius ("Gilmore's Memorandum"),[5] did not believe Hannigan's story as recounted in the Use of Force Report and requested Chappius to have the incident investigated.  Gilmore also noted

---

[4] Conway Dec. Exh. A at 6; Plaintiff's Exh. 5.
[5] Conway Dec. Exh. A at 12.

Hannigan never provided any explanation for failing to immediately report the use of force.

On November 17, 2007, Plaintiff was examined by Defendant registered nurse Danielle Esposito at 8:50 P.M. in connection with the "Use of Force Report."  Swelling and bruising on the left side of Plaintiff's face shown in photographs taken of Plaintiff at that time in consistent with Esposito's report of a 2" by 2" "reddened area" on the left side of Plaintiff's face, with no swelling or bruising on Plaintiff's body.  Plaintiff maintains the presence of other correctional officers during the examination prevented him from disclosing to Esposito the sexual nature of the physical assault he endured by Hannigan, but that he did mention it to Esposito at 9:00 A.M. the next morning when Esposito was making her rounds, requesting to be examined by a physician for injuries to his genitals, but Esposito denied the request and Plaintiff was left in "excruciating pain."  Amended Complaint ¶ 68.  Plaintiff again requested medical treatment at 9:30 A.M. on November 18, 2007, from Defendant Bea who was conducting his rounds.  After Plaintiff described the sexual nature of the assault to Bea, Bea ordered Plaintiff be re-examined in Attica's infirmary in connection with Plaintiff's newly claimed injuries.  Accordingly, Esposito re-examined Plaintiff at 10:30 A.M. on November 18, 2007, but noted she observed nothing visibly wrong with Plaintiff's testicles.  Per Bea's request, a copy of Plaintiff's medical record pertaining to the Esposito's examination was given to the DOCCS official who escorted Plaintiff to and from the examination, for delivery to Bea.  Bea described Plaintiff's complaints in a memorandum to Captain Kevin Brown ("Bea's Memorandum"), to which Bea attached the copy of Plaintiff's medical report completed by Nurse Esposito, without obtaining Plaintiff's authorization for its

disclosure, and Brown forwarded Bea's Memorandum to his superior, Deputy Superintendent for Security Chappius.

In an interview with New York Inspector General representative Mr. Strough ("Strough") on November 19, 2007, Plaintiff described his injuries and signed a written complaint detailing the physical and sexual nature of the assault by Hannigan and White.  Allegedly to retaliate against Plaintiff for filing the commissary grievance, refusing to sign the memo repudiating the ordered return of the commissary grievance funds to Plaintiff's inmate account, and speaking with Strough, Plaintiff was served on November 19, 2007, with two false Tier III inmate misbehavior reports ("the misbehavior reports"), with White charging in the first misbehavior report ("White misbehavior report")[6] violations of prison disciplinary rules 105.12 (unauthorized organization display), and 107.70 (providing false information), and Hannigan charging in the second misbehavior report ("Hannigan's misbehavior report"), violations of prison disciplinary rules 100.11 (attempted assault), 107.10 (interfering with staff), 107.20 (lying), and 104.11 (violent conduct).  For each of the misbehavior reports, Plaintiff was presented with a list of inmate assistants to aid Plaintiff in defending against the charges in each of the pending misbehavior reports.  Plaintiff, however, maintains that although he selected an inmate assistant in connection with each of the misbehavior reports, both inmate assistants failed to obtain certain materials Plaintiff needed to defend against the misbehavior reports and for which, on November 21, 2007, Plaintiff made requests pursuant to New York Freedom of Information Law ("FOIL") and HIPAA.

The Tier III disciplinary hearing on Hannigan's misbehavior report commenced before Defendant Dixon on November 23, 2007 ("first disciplinary hearing"), at which

---

[6] Filed as Plaintiff's Exh. #, and

time Plaintiff stated he was not provided with enough opportunity to state his case.

Dixon, believing Plaintiff was disruptive, adjourned the first disciplinary hearing for three

hours, and informed that Plaintiff could not be present while other general population

inmates presented testimony, to which Plaintiff objected.  Plaintiff was allowed to call as

witnesses DOCCS employees Hannigan, White, Counselor Sobaszek, and Gilmore,

and inmates Pritchard, and Pace, the latter of whom refused to testify.  Dixon denied

Plaintiff's request to call Conway, Strough, Bea, Supervisor George Stubel, and

Esposito.  Plaintiff maintains he was not permitted to question Gilmore regarding the

notation on Gilmore's Memorandum that Gilmore did not believe Hannigan's story.

Plaintiff made requests on November 20, 21, and 23, 2007, to be seen at sick

call by a medical specialist for pain to his genitals and back, but was not seen in sick

call on any of those dates.  On November 25, 2007, Plaintiff filed an inmate grievance

("first inmate grievance"),[7] entitled "Lt. Authorized Use of Force/No Medical Care,"

complaining of the assault by Hannigan and White, and the denial of medical treatment

for the injuries Plaintiff sustained during the assault, expressing alarm at the situation.

On November 27, 2007, Plaintiff was examined in connection with his complaint

of pain in his genitals and back by Dr. Raul who prescribed the pain reliever Motrin, and

the antibiotic Doxycycline to treat a urinary tract infection which Plaintiff maintains

caused him to walk with a limp and interfered with his sleep.  Also on November 27,

2007, Plaintiff sent letters to the New York State Police in Albany and to Wyoming

County District Attorney Gerald L. Stout, in Warsaw, New York, demanding Hannigan

and White be criminally charges in connection with the November 17, 2007 assault.

Plaintiff sent similar letters to the New York Inspector General and former New York

---

[7] Filed as Brown Dec. Exh. A, Bates No. 0513-14.

Governor Eliot Spitzer accusing Defendants of assault, tampering with Plaintiff's mail, and denying Plaintiff's request to be transferred to a different correctional facility to avoid further harm, so as to retaliate against Plaintiff for exercising his constitutional rights in filing grievances.

On November 29, 2007, a Tier III disciplinary hearing over which Polak presided commenced on White's misbehavior report ("second disciplinary hearing"), at which Plaintiff's attempts to submit documents in support of his defense were denied, Plaintiff's questioning of Hannigan was limited by Polak's arbitrarily disconnecting the telephone line over which Hannigan had been testifying, and Polak did not allow Plaintiff to introduce into evidence the commissary products White purportedly confiscated from Plaintiff's cell, which Plaintiff maintains were destroyed prior to the second disciplinary hearing, and denied Plaintiff's request to call as witnesses Conway, Strough, Bea, Stubel, and Esposito.  Although Hannigan testified Plaintiff's cell search was pursuant to a memorandum authorizing the search, inmate records coordinator Sandra Prusak ("Prusak"),[8] testified no such memorandum existed.  Polak denied Plaintiff's requests to call Conway and Strough to testify as neither had any personal knowledge of what transpired during the cell search and subsequent physical altercation in the day room. At the second hearing's conclusion on November 29, 2007, Polak found Plaintiff guilty on both violations charged in White's misbehavior report, and imposed a disciplinary sentence of 90 days in SHU confinement with 30 days loss of packages, commissary and phone privileges, $ 30 restitution to be deducted from Plaintiff's inmate account, and confiscation of contraband items from Plaintiff's cell.  By letter dated December 4,

---

[8] Prusak is not a party to this action.

2007, Plaintiff appealed Polak's disposition and disciplinary sentence on White's misbehavior report.

On December 3, 2007, Plaintiff filed a second inmate grievance ("second grievance"),[9] repeating that Bea, upon being advised by Plaintiff of the assault, attached Plaintiff's medical records pertaining to the assault to Bea's Memorandum without Plaintiff's permission, asserting Bea was involved in a conspiracy to cover-up the assault.  The Inmate Grievance Committee ("IGC"), combined the first and second grievance into one grievance under Grievance No. 52885-07 ("the combined grievance").  It was during his investigation of the combined grievance that Brown became aware that DOCCS Investigator General's Office ("IG"), was also investigating the matters asserted in the combined grievance with regard to Hannigan.  Brown reported his findings to Chappius, asserting he found no evidence of misconduct by Bea.

Also on December 3, 2007, Plaintiff underwent a scrotal sonogram for testicular pain and possible injury at Wyoming County Community Hospital.  The sonogram failed to identify any pathology.

When Plaintiff's first disciplinary hearing resumed on December 10, 2007, Dixon stated the FOIL requests made after Plaintiff's inmate assistants failed to obtain information Plaintiff requested were "inadequate."  Dixon then found Plaintiff guilty on all four prison rule violations charged in Hannigan's Misbehavior Report, and sentenced Plaintiff to 90 days in SHU with attendant loss of privileges.

---

[9] Brown Dec. Exh. A, Bates No. 0515-16.

On December 21, 2007, Plaintiff's combined grievance was denied by Superintendent Conway ("Superintendent's Decision").[10]  That same day, Plaintiff was transported to Wyoming County Hospital where he underwent an ultrasound examination of his testicles, following which Plaintiff was examined by Dr. Leskowski regarding residual pain in his genitals.  On December 24, 2007, Plaintiff requested a refill of Motrin for pain relief, and repeated the request on December 26, 2007, but the prescription was not refilled until December 28, 2007.

On December 30, 2007, Plaintiff appealed the Superintendent's Decision as well as the disposition and disciplinary sentence on Hannigan's misbehavior report.

On January 9, 2008, Plaintiff filed another inmate grievance ("third grievance"), challenging the disposition of Hannigan's misbehavior report based on Prusak's testimony that the memorandum pursuant to which Plaintiff's cell was searched on November 17, 2007 did not exist.  Plaintiff's third grievance was denied on January 29, 2008.

On January 30, 2008, Plaintiff's appeal of the Superintendent's Decision on the combined grievance was denied by the IGP Central Office Review Committee ("CORC"), and Defendant Director of SHU/Inmate Disciplinary Program Bezio modified the first disciplinary hearing result, notifying Plaintiff on February 1, 2008 that the unauthorized organizational display charge was dismissed but the false information charge was upheld.

Near the end of January or beginning of February 2008, Plaintiff, upon Dr. Leskowski's referral, was transported to Strong Memorial Hospital in Rochester, New York, for examination by a specialist regarding Plaintiff's injured testicles.  Plaintiff was

---

[10] Brown Dec. Exh. A, Bates No. 518.

advised to return for further examination and assessment of possible damage to his reproductive organs.

On February 12, 2008, Plaintiff requested Bezio reconsider Plaintiff's appeal of the first disciplinary hearing regarding Hannigan's misbehavior report.  On February 29, 2008, all charges in Hannigan's misbehavior report were reversed and expunged by Bezio and, by letter dated March 3, 2008, Plaintiff was advised of the appeal result. Plaintiff expressed to Defendants SHU Counselor Edward O'Mara ("O'Mara"), and senior counselor Daniel O'Connor ("O'Connor"), his concerns that upon being released from Attica's SHU and returned to Attica's general prison population, Defendants would subject Plaintiff to further assaults in retaliation for the grievances Plaintiff filed against Defendants.  On March 7, 2008, Plaintiff was transferred from Attica to Auburn Correctional Facility ("Auburn").

Upon arriving at Auburn, Plaintiff advised Auburn's medical staff he had pain in his lower back resulting from the assault by Hannigan and White at Attica on November 17, 2007.  Plaintiff repeated his complaints on March 12, 2008, and on March 26, 2008, Plaintiff was scheduled for examination by a physician.

On April 8, 2008, Bezio reversed the guilty disposition as to both charges in White's misbehavior report, reversing the charged violation of Rule 105.12 and ordering reimbursement to Plaintiff's account the $ 30 in restitution previously deducted for the reversed violation.  As such, all six DOCCS disciplinary rules violations with which Plaintiff was charged in both misbehavior reports were dismissed.  Plaintiff, however, maintains his prison inmate account was never reimbursed for the money previously deducted from his account.

X-rays of Plaintiff's lumbosacral spine taken on April 14, 2008, showed no fractures, subluxation, or significant arthritis.  On three occasions between April and June 2008, Plaintiff attended physical therapy treatments for his back pain before the treatments were discontinued despite Plaintiff's continued complaints of back pain.

## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).   "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Plaintiff's claims seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983, however, does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Here, Plaintiff's claims are grounded in the First, Eighth, and Fourteenth Amendments.

Moving Defendants argue in support of partial summary judgment that Plaintiff's due process rights were not violated by his disciplinary hearings, Moving Defendants' Memorandum at 5-9; Defendants Bea, Bezio, Brown, Carhart, Conway, Khahaifa, and Lambert lack the requisite personal involvement for § 1983 liability, *id.* at 9-16; that the disciplinary hearings dispositions were eventually overturned is not relevant to Plaintiff's due process claims, *id.* at 17; and the assault claim against White is barred by New York Corrections Law § 24, *id.* at 18-19.  In opposition to summary judgment, Plaintiff argues evidence in the record, construed in Plaintiff's favor, raises factual issues for trial regarding whether the alleged constitutional violations by Attica corrections officers occurred with the authorization, approval, or encouragement of Defendant supervisory officers Bea, Conway, Dixon, Polak, and Brown, Plaintiff's Memorandum at 14-15; whether Moving Defendants retaliated against Plaintiff for exercising his First Amendment free speech rights by filing grievances, *id.* at 15-17, and whether the assault and subsequent denial of medical care for injuries sustained in the assault violated the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id.* at 17-22.  In further support of summary judgment, Moving Defendants argue Plaintiff has failed to assert any factual allegations against Defendant Khakaifa, Moving Defendants' Reply at 3-4; Plaintiff continues to assert arguments with regard to claims that have been dismissed, *id.* at 4-5; the Amended Complaint fails to allege a conspiracy claim, *id.* at 5-6; Plaintiff has failed to raise questions of material fact as to the personal involvement of the supervisory Moving Defendants, *id.* at 6-7; and Plaintiff's due process rights were not violated by the disciplinary hearings.  *Id.* at 7.

18

**2.     Due Process Rights and Disciplinary Hearings**

In his Sixth Claim, Plaintiff alleges Defendants Polak, Dixon, Bezio, Bellamy,

Brown, and Conway denied him due process in connection with the prison disciplinary

hearing held on the alleged false misbehavior reports, in violation of the Fourteenth

Amendment.  Complaint ¶¶ 85-148.  Plaintiff specifically alleges violations of his due

process rights by disciplinary hearing officers Polak and Dixon, *id.* ¶ 148(a); malicious

deprivation of liberty, *id.* ¶ 148(b); destruction of relevant evidence by facility staff, *id.* ¶

148(c); denial of Plaintiff's right to call witnesses and obtain relevant documents, *id.* ¶

148(d); conspiracy to find Plaintiff guilty regardless of evidence, *id.* ¶ 148(e); and

unwarranted denial of Plaintiff's presence during the disciplinary hearings.  *Id.* ¶ 148(f).

In support of summary judgment on this claim, Moving Defendants argue Plaintiff was

not denied any due process at either of the disciplinary hearings because both hearings

were conducted within all constitutional parameters.  Moving Defendants' Memorandum

at 5-9.  In opposition to summary judgment, Plaintiff argues evidence in the record

establishes Plaintiff was denied the opportunity to call witnesses and provide evidence

at the disciplinary hearings, resulting in Plaintiff being punished for disciplinary charges

which were ultimately determined to be unfounded.  Plaintiff's Memorandum at 21.  In

further support of summary judgment, Moving Defendants assert none of Plaintiff's

complaints regarding the prison disciplinary hearings establish any violation of the

narrow due process rights to which Plaintiff is entitled at such hearings.  Moving

Defendants' Reply at 7.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974).  "[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*."  *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004).  As such, a violation of a state prison regulation during a prison disciplinary hearing does not give rise to a § 1983 due process claim.  *Blouin v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) ("federal law, not state regulations, determined the procedures necessary to protect that liberty interest.").  Prison inmates nevertheless are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as . . . special confinement that imposes an atypical hardship."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

In particular, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."  *Sira*, 380 F.3d at 69.  "Since *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'"  *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).  "This standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling."  *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); italics in original).  The "some evidence" standard does, however, requires "reliable evidence." *Id.* (citing *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).  As to the denial of Plaintiff's request for certain witnesses to testify on his behalf, due process requires only that

some explanation be provided at the disciplinary hearing establishing why the requested inmate would not be testifying. *Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994) (citing *Ponte v. Real*, 471 U.S. 491, 499 (1985)).

Assuming, *arguendo*, Plaintiff's confinement in SHU for 105 days[11] constituted the requisite deprivation of a liberty interest within the meaning of *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (a prisoner punished after a disciplinary hearing has not thereby been deprived of a liberty interest unless the subsequent punishment imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life"); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("The longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days"), a point not argued by either party in the instant case, the court considers whether there is sufficient evidence in the record to permit a finding that the deprivation resulted from a denial of due process.  Specifically, "[a] prisoner may not properly be deprived of a cognizable liberty interest without due process of law." *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) (citing *Wolff*, 418 U.S. at 555).  The Supreme Court has "'ruled that where the prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty on the basis of insufficient evidence, the claim must be rejected if there was at least 'some evidence' to support the decision.'" *Id.* (quoting *Hill*, 472 U.S. at 455).  Significantly, "'[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, *the relevant question is whether there is any evidence in the record that could*

---

[11] Although Plaintiff was sentenced to 90 days in SHU in connection with both misbehavior reports, Plaintiff points out, Plaintiff's Memorandum at 20, that Plaintiff actually was confined in SHU for "three and one-half months," *i.e.*, 105 days, a fact Moving Defendants do not dispute.

*support the conclusion reached by the disciplinary board.*'" *Id.* (quoting *Hill*, 472 U.S. at 455-46 (italics in original)).

### A.    First Disciplinary Hearing

Here, the record establishes that Plaintiff was afforded all required due process at the first disciplinary hearing held on Hannigan's misbehavior report.  Specifically, that Plaintiff had advance notice of the charges is established by the fact he was provided with a copy of Hannigan's misbehavior report on November 19, 2007, and thus had four days advance notice of the charges before the first disciplinary hearing commenced on November 23, 2007.  DeLee Dep. Tr. at 73.  Plaintiff neither disputes Dixon's assertions, Dixon Declaration ¶¶ 4 and 39, that upon being assigned as the hearing officer for the first disciplinary hearing, Dixon had no prior knowledge of Plaintiff or of Hannigan's allegations against Plaintiff in Hannigan's misbehavior report, Plaintiff's Statement of Facts ¶ 136, nor otherwise challenges Dixon's impartiality as to the first disciplinary hearing.

With regard to whether Plaintiff was afforded a reasonable opportunity to call witnesses and present documentary evidence, *Sira*, 380 F.3d at 69, the record establishes Plaintiff was provided with an opportunity to select and meet with an inmate assistant to aid Plaintiff in preparing his defense to the charges, and requested certain witnesses and documents Plaintiff believed would be helpful to Plaintiff's defense. DeLee Dep. Tr. at 74.  Specifically, in support of summary judgment on this issue, Moving Defendants submit the declaration of the hearing officer, Defendant Dixon, who stated Plaintiff chose as his inmate assistant Joseph Sobaszek ("Sobaszek").  Dixon Declaration ¶ 15.  Although Dixon denied Plaintiff's requests to call as witnesses

Defendants Conway, Strough, Bea, Stubel, and Esposito, Dixon explained that he did

not permit Plaintiff to call these witnesses because Dixon believed the testimony

provided by the other witnesses who did testify, including Defendants Hannigan and

White, DOCCS employees Sobaszek and Gilmore, and inmate Pritchard,[12] was

sufficient, the witnesses Plaintiff was not permitted to call were not eyewitnesses to the

alleged assault and, any testimony from them would only be redundant of the witnesses

who did testify and, thus, unnecessary.  Dixon Declaration ¶¶ 16, 26, 28-33, 35; and

Exh. A, Bates Nos. 646-48, 656-58, 661-71, 673-74.  This is consistent with the

transcript of the first disciplinary hearing, First Disciplinary Hearing Tr.[13] at 671-73, in

which Dixon stated he would not call any of the other witnesses Plaintiff requested

because the testimony of such witnesses, none of whom witnessed the assault, would

be redundant.  Significantly, "[a] prisoner's right to call witnesses and present evidence

in disciplinary hearings may be denied on the basis of irrelevance or lack of necessity."

*Brown v. Department of Correctional Services of New York*, 2013 WL 791393, at * 8

(W.D.N.Y. Mar. 4, 2013) (citing *Kingsley v. Bur. of Prisons*, 937 F.2d 26, 30 (2d Cir.

1991)).  *See Wolff*, 418 U.S. at 566 (prison officials have discretion to keep disciplinary

hearing within reasonable limits and to refuse to call a witness for irrelevance or lack of

necessity).  Plaintiff admits Dixon explained these reasons for denying Plaintiff's request

to call such witnesses, but disputes that the testimony he anticipated eliciting from the

witnesses would be redundant.  Plaintiff's Dep. Tr.[14] at 80-85; Plaintiff's Statement of

Facts ¶ 158.  "The burden, however, is not on the prisoner to establish that an officer's

---

[12] Plaintiff was also permitted to call inmate Pace who refused to testify.

[13] References to "First Disciplinary Hearing Tr. at __" are to the page of the transcript of the First
Disciplinary Hearing, filed as Dixon Dec. Exh. A.

[14] References to "Plaintiff's Dep. Tr." are to the page of the transcript of Plaintiff's Deposition, portions of
which are filed as Zimmermann Dec. Exh. A.

conduct at a hearing was arbitrary and capricious, 'but upon the official to prove the rationality of the position.'" *Id.* (quoting *Kingsley*, 937 F.2d at 30-31).  Defendants have thus, as required, *Kingsley*, 937 F.2d at 30-31, established the rationality of Dixon's decision for denying Plaintiff's request to call the additional witnesses.  Nor do prison inmates have a constitutional right to be present when testimony of a disciplinary hearing witness is taken.  *Dawes v. Leondardo*, 885 F.Supp. 375, 377 (N.D.N.Y. 1995) (citing *Francis v. Coughlin*, 891 F.2d 43, 48 (1988) ("Prison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding."), *aff'd*, 71 F.3d 406 (2d Cir. 1995) (table).

Finally, a prison disciplinary hearing will not violate due process so long as the disposition is supported by "some evidence."  *Gaston*, 249 F.3d at 163.  Here, Dixon's written decision finding Plaintiff guilty on all four charged disciplinary violations provides the evidence upon which the disposition is based as well as the reasons for the resulting disciplinary action imposed.  *Sira*, 380 F.3d at 69.  In Dixon's written hearing disposition ("First Disciplinary Hearing Disposition"),[15] Dixon writes he relied on Hannigan's misbehavior report, testimony from Plaintiff's witnesses and Hannigan's statements that while Plaintiff was being interviewed about the commissary claim, Plaintiff grabbed a letter from  Hannigan's left hand and prevented Hannigan from leaving, and force was used to stop Plaintiff's behavior.  First Disciplinary Hearing Disposition at 49.  Significantly, Dixon's findings are supported by the disciplinary hearing testimony of both Hannigan and White.  First Disciplinary Hearing Tr. at Bates 661-63 (White); and Bates 666-68 (Hannigan).  Dixon further explained that the guilty disposition and discipline imposed were "given to deter this conduct as it cannot be

---

[15] Filed as Bezio Dec. Exh. B; and as Plaintiff's Exh. 5.

tolerated." First Disciplinary Hearing Disposition at 49.  Accordingly, the guilty

disposition on all four counts in Hannigan's misbehavior report is supported by "some

evidence" in the record, and Plaintiff was not deprived of due process with regard to the

first disciplinary hearing.

.      **B.      Second Disciplinary Hearing**

The record also establishes that Plaintiff was afforded all required due process at

the second disciplinary hearing held on White's misbehavior report.  Plaintiff received a

copy of White's misbehavior report on November 19, 2007, ten days before the second

disciplinary hearing commenced on November 29, 2007.  DeLee Dep. Tr. at 60-61.

Plaintiff was provided with a list of inmate assistants from which Plaintiff selected an

assistant, Denzel, from whom Plaintiff requested assistance in obtaining witnesses to

testify on Plaintiff's behalf, as well as documentary evidence Plaintiff desired to present

at the second disciplinary hearing.  DeLee Dep. Tr. at  62-64; Bezio Declaration Exh. A,

Doc. No. 104 at 31-32.  Plaintiff, however, upon meeting with his inmate assistant a

second time, refused to sign the inmate assistance form purportedly because Plaintiff

did not believe the assistant was helping Plaintiff.  DeLee Dep. Tr. at 64-65.  Polak's

impartiality is demonstrated by the fact that prior to being assigned to conduct the

second Tier III disciplinary hearing, Polak, the hearing officer, had not met Plaintiff and

had no knowledge of the charges against Plaintiff other than from reading White's

misbehavior report.  Polak Declaration ¶¶ 9-10, 37-38.  Although Plaintiff's attempts to

submit certain documents in support of his defense were denied, Polak explained that

the documents Plaintiff was not permitted to introduce into evidence were not relevant

to the pending disciplinary charges in White's misbehavior report.  Plaintiff's Dep. Tr. at

69-70.  Although Plaintiff maintains he also requested to call as witnesses Bea, Stubel, and Esposito, Plaintiff's Dep. Tr. at 69-70, the Hearing Record completed in connection with the second disciplinary hearing, Bezio Dec. Exh. A, Doc. No. 104 at 27, lists as witnesses requested by Plaintiff only White, Hannigan, Conway, and Strough, and Polak explained that Conway and Strough lacked first-hand knowledge of what transpired during the cell search and subsequent physical altercation in the day room.  Plaintiff's Dep. Tr. at 69-70.

In his written hearing disposition, Bezio Declaration Exh. A, Doc. No. 104 at 25, Polak explains the two guilty findings are based on statements in White's misbehavior report and verbal testimony "that clearly identifies inmate DeLee as having unauthorized writing on his cell walls & of providing false statements regarding commissary items found in his cell."  *Id.*  Polak also found incredible Plaintiff's testimony that he never notified staff about the writing on the cell wall because he never noticed it despite being in the cell for one month prior the subject cell search on November 17, 2007.  *Id.*  Polak further memorialized that he also relied upon Hannigan's testimony that Hannigan had authorized the search of Plaintiff's cell as part of an investigation by Hannigan into Plaintiff's commissary grievance, as well as the confiscation of any items found relevant to such grievance.  *Id.*  Polak explained that he ordered the confiscation and destruction of the commissary items "to deter similar misconduct in the future and to recoup costs of repainting the cell."  *Id.*  Polak also stated in writing he denied Plaintiff's requests to call as witnesses Conway and Strough because neither was present for the cell search or use of force and thus had no firsthand knowledge of the incident.  *Id.* at 26.

Although Plaintiff maintains he also wanted to call to testify inmate records coordinator Sandra Prusak ("Prusak"),[16] whom Plaintiff maintains would have denied that the memorandum pursuant to which Hannigan maintains Plaintiff's cell was searched on November 17, 2007, ever existed, Plaintiff's Memorandum at 11-12, Polak's written statement that White's testimony that the cell search was authorized by Hannigan establishes that Polak was relying on some evidence supporting the cell search.  Further, even if Polak's failure to call other witnesses to testify on Plaintiff's behalf, including Prusak, Bea, Stubel and Esposito was erroneous, such failure is subject to harmless error review.  *See Sims v. Artuz*, 103 Fed. Appx. 434, 436 (2d Cir. 2004) (upholding judge's determination applying harmless error review to defendant's undisputed failure to provide a reason for refusing to call certain witnesses during a disciplinary hearing).  *See also Clark v. Dannheim*, 590 F.Supp.2d 426, 431 (W.D.N.Y. 2008) (applying harmless error review in holding inmate plaintiff was not prejudiced by disciplinary hearing officer's denial of request to call as requested witness a certain DOCCS sergeant where the only evidence in the record concerning the sergeant's recollection of the relevant events tended to support the prison guard's assertion that the plaintiff punched the guard without provocation).  Moreover, even though the denial of the right to call witnesses without explanation violates New York's prison disciplinary regulation, N.Y. COMP. CODES R & REGS. tit. 7, § 254.5(a), the violation of a state regulation alone does not give rise to a federal due process violation.  *See Blouin*, 356 F.3d at 363 ("federal law, not state regulations, determines the procedures necessary to protect that liberty interest"); and *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("state statutes do not create federally protected due process entitlements to specific

---

[16] Prusak is not a party to this action.

state-mandated procedures"). Rather, "'[e]levating a state-mandated procedure to the status of a constitutionally protected liberty or property interest, would make process an end in itself rather than a requirement whose constitutional purpose is to protect a substantive interest in which the individual has a claim of entitlement.'" *Holcomb*, 337 F.3d at 224 (quoting *Sealed v. Sealed*, 332 F.3d 51, 57 n. 5 (2d Cir. 2003)).

Accordingly, the guilty disposition on both counts in White's misbehavior report is also supported by "some evidence" in the record such that Plaintiff was not deprived of due process with regard to the second disciplinary hearing.

### C.    Overturning of Disciplinary Charges

Nor does the fact that both disciplinary hearings were, eventually, overturned require a different finding; rather, as discussed above, Discussion, *supra*, at 22-28, both disciplinary hearing dispositions were supported by "some evidence," which is the minimum due process required for a prison disciplinary hearing. *Gaston*, 249 F.3d at 163 (citing *Hill*, 472 U.S. at 455). Furthermore, Plaintiff's prison disciplinary hearings were overturned based on violations of New York prison regulations which, as discussed, Discussion, *supra*, at 27-28, do not alone give rise to a federal due process violation. Moving Defendants thus are entitled to summary judgment on this claim.

### 3.    Personal Involvement

Moving Defendants seek summary judgment on all claims against Defendants Bea, Bezio, Brown, Carhart, Conway, Khahaifa, and Lambert ("Supervisory Defendants"), on the basis these Defendants were not personally involved in any of the alleged unlawful acts against Plaintiff. Moving Defendants' Memorandum at 9-16. In opposition to summary judgment, Plaintiff asserts he has established sufficient facts

supporting his claims that these Supervisory Defendants denied Plaintiff the right to call witnesses and present evidence at the disciplinary hearings resulting in punishment to Plaintiff on the charges in the White and Hannigan misbehavior reports that were filed to retaliate against Plaintiff for filing inmate grievances.  Plaintiff's Memorandum at 20-21. In further support of summary judgment Moving Defendants argue Plaintiff fails to point to evidence raising a genuine issue of material fact regarding the personal involvement of the Supervisory Defendants.  Moving Defendants' Reply at 6-7.

"'[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.'"  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)).  "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). *Richardson*, 347 F.3d at 435 ("To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.").  A mere linkage in the chain of command, however, is insufficient to implicate a supervisory DOCCS official in a § 1983 claim.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  Nor may a defendant in a § 1983 action be held liable for a constitutional violation merely because the defendant held a high position of authority.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Nevertheless, "while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as

29

opposed merely to rubberstamping the results." *Collins v. Ferguson*, 804 F.Supp.2d 134, 140 (W.D.N.Y. 2011).

"Supervisory liability under § 1983 'can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.'" *Richardson*, 347 F.3d at 435 (quoting *Hernandez*, 341 F.3d at 145). Furthermore, insofar as the conduct on which any of Plaintiff's claims against the Supervisory Defendants could constitute negligence, negligence does not rise to a constitutional violation under § 1983.  *See Bennett v. City of New York*, 69 Fed.Appx. 11, 12 (2d Cir. June 23, 2003) (affirming district court's finding that inmate plaintiff who slipped in a puddle of water and fell while emerging from a correctional facility's shower, had alleged a "simple negligence claim" which did not support a constitutional violation). In the instant case, Plaintiff has failed to point to evidence establishing a triable issue of fact which could establish the requisite personal involvement for liability of any of the Supervisory Defendants.  The court considers whether any evidence in the record could establish liability on the part of any of the Supervisory Defendants so as to avoid summary judgment.

### A.    Bea

Plaintiff claims Bea failed to properly train defendant corrections officers and encouraged the prison policies leading to the use of excessive force against Plaintiff

and causing Plaintiff's injuries.  Amended Complaint ¶¶ 54, 55.  Plaintiff further alleges

that at 9:30 A.M., on November 18, 2007, the day after the assault, Plaintiff alerted Bea,

who was making his rounds of the correctional facility, of Plaintiff's medical needs, and

that Bea then interviewed Plaintiff regarding the assault and arranged for Plaintiff be

escorted to Attica's health clinic for examination.  *Id.* ¶¶ 68- 70.  According to Plaintiff,

per Bea's order, Nurse Esposito, upon reexamining Plaintiff at the health clinic, released

Plaintiff's medical records, without obtaining Plaintiff's consent, to the SHU officer

escorting Plaintiff, and Bea then attached a copy of Plaintiff's medical records to Bea's

Memorandum report to Defendant Brown.  *Id.* ¶¶ 71-72.  The only other references to

Bea in the Complaint are that Plaintiff's requests to call Bea as a witness as the

disciplinary hearings were denied.  *Id.* ¶¶ 116-17.  These allegations, if true, simply fail

to establish Bea was involved in any violation of Plaintiff's constitutional rights.

     An inmate's right to prevent the unwanted disclosure of his personal health

information is protected by the Fourteenth Amendment Due Process Clause.  *Powell v.*

*Schriver*, 175 F.3d 107, 112 (2d Cir. 1999); *Doe v. City of New York*, 15 F.3d 264, 267

(2d Cir. 1994) (Fourteenth Amendment right to privacy encompasses the "right to

protection regarding information about the state of one's health.").  "It follows that prison

officials can impinge on that right only to the extent that their actions are 'reasonably

related to legitimate penological interests.'"  *Powell*, 175 F.3d at 112.  The "gratuitous

disclosure of an inmate's confidential medical information as humor or gossip . . . is not

reasonably related to a legitimate penological interest."  *Powell v. Schriver*, 175 F.3d

107, 112 (2d Cir. 1999).  *See also Meyers v. Dolac*, 2013 WL 5175588, at * 8 (W.D.N.Y.

Sept. 12, 2013) (defendants not entitled to summary judgment where disclosure of

inmate's Hepatitis C status was done in a "gratuitous manner").  In the instant case, the evidence in the record fails to establish any issue of fact that the disclosure of Plaintiff's medical records was in connection with anything other than Bea's investigation into the November 17, 2007, assault on Plaintiff, which is a legitimate penological interest. Significantly, Plaintiff does not allege he suffered any harm as a result of Bea's alleged order directing Esposito to turn Plaintiff's medical records over to the SHU escorting officer who then provided the records to Bea who attached them to Bea's Memorandum to Brown, that such escorting officer divulged the contents of the records to anyone, or was even aware of their contents.  As such the evidence in the record establishes, at most, that Bea was negligent in directing the release of such records, which is insufficient to sustain a civil rights violation.  *Bennett,* 69 Fed.Appx. at 12 (holding no civil rights violation based on mere negligence).

The only other possible violation of any federal law asserted by Plaintiff is a HIPAA violation based on Bea's alleged order to Esposito to release Plaintiff's medical records, without Plaintiff's permission, to the escorting SHU officer which Bea then attached to Bea's Memorandum to Brown.  "'Although HIPAA generally provides for the confidentiality of medical records, . . . an individual cannot sue for its enforcement or for damages caused by disclosures.'"  *Meyers*, 2013 WL 5175588, at * 9 (quoting *Ross v. Westchester County Jail*, 2012 WL 86467, at * 9 (S.D.N.Y. Jan. 11, 2012) (citing 42 U.S.C. §§ 1320d-1 to d-7), and *Warren Pearl Construction Corp. v. Guardian Life Ins. Co. of Am.*, 639 F.Supp.2d 371, 377 (S.D.N.Y. 2009))).  Rather, "[o]nly the Secretary of Health and Human Services or other government authorities may bring a HIPAA

enforcement action." *Warren Pearl Construction Corp.*, 639 F.Supp.2d at 376. This claim thus also fails under HIPAA.

Summary judgment on Plaintiff's claims against Bea should be GRANTED.

**B.     Bezio**

Plaintiff claims against Bezio are that Bezio, as DOCCS Director of SHU/Inmate Disciplinary Program, denied Plaintiff due process in violation of the Fourteenth Amendment by failing to more promptly reverse the guilty dispositions following the disciplinary hearings on the misbehavior reports, with Plaintiff not receiving until April 17, 2008, restitution of monies erroneously taken from his account in connection with the charged violation of prison disciplinary rule § 105.12 (unauthorized organization display) in the White misbehavior report, despite the reversal of the guilty disposition on such charge.  Amended Complaint ¶¶ 111-14.  In support of summary judgment on these claims, Moving Defendants argue evidence in the record fails to suggest Bezio denied Plaintiff any due process in violation of the Fourteenth Amendment, given that Bezio approved the dismissal of all charges against Plaintiff, such that Plaintiff was released from SHU earlier than Plaintiff's slated release date.  Moving Defendants' Memorandum at 12-13.  Plaintiff offers no argument in opposition to summary judgment on the claims against Bezio, to which failure Moving Defendants point in further support of summary judgment.  Moving Defendants' Reply at 6-7.

Moving Defendants' arguments in support of summary judgment are corroborated by Bezio's statements that in connection with Plaintiff's appeal of Polak's November 29, 2007 guilty disposition following the second disciplinary hearing held with regard to the prison rule violations charged in White's Misbehavior Report, Bezio, on

January 30, 2008, modified the result by dismissing the unauthorized activities charge,

105.12.  Bezio Declaration ¶¶ 20-25.  After Plaintiff requested reconsideration by letter

dated February 12, 2008, Bezio again reviewed the second disciplinary hearing and

reversed the other disciplinary rule violation, such that both charges in White's

misbehavior report were reversed and expunged.  *Id.* ¶¶ 26-27.  Bezio also states that

on February 29, 2008, Bezio reversed the results of the first disciplinary hearing held

with regard to the Hannigan Misbehavior Report, Bezio Declaration ¶¶ 28-32, such that

Plaintiff should have been released from SHU within a couple of days of February 29,

2008, *id.* ¶¶ 33-34, which was prior to Plaintiff's stated SHU release date.  *Id.* ¶ 37.

Plaintiff points to no evidence establishing an issue of fact as to any of these statements

by Bezio.

      Plaintiff's failure to meet his burden and point to any evidence in support of his

claims against Bezio requires dismissal of such claims.  *Goenaga*, 51 F.3d at 18 (to

defeat a properly supported summary judgment motion, the nonmoving party must

come forward with evidence that would be sufficient to support a jury verdict in its favor).

Accordingly, Moving Defendants' Motion should be GRANTED as to the claims against

Bezio.

## C.    Brown

      Plaintiff claims Brown, a DOCCS Captain assigned to investigate the assault,

encouraged policies leading to the use of excessive force against Plaintiff on November

17, 2007, and failed to adequately train, direct, supervise, or exercise control over other

DOCCS employees so as to prevent the alleged violations of Plaintiff's civil rights.

Amended Complaint ¶¶ 14, 54-55.  Plaintiff also asserts Brown was the recipient of

Defendant Bea's November 18, 2007 Memorandum regarding the assault, *id.* ¶ 69, to which Plaintiff's medical records were attached, *id.* ¶ 71, and that Plaintiff wrote several letters to Brown complaining that although the unauthorized organization action in violation of prison disciplinary rule 105.12 had been dismissed, Plaintiff had yet to receive restitution of the monetary fine assessed in connection with the guilty disposition and which had been deducted from his inmate account.  *Id.* ¶ 114.

    In support of summary judgment on this claim, Moving Defendants argue that Brown played no direct role in any of the alleged violations against Plaintiff given that Brown was not on duty at the time of the assault, was not authorized to discipline staff members, but only to report staff misbehavior to his superiors, which Brown did by forwarding Bea's Memorandum regarding Plaintiff's allegations against Hannigan to Brown's superior, Deputy Superintendent for Security Chappius ("Chappius"), and investigated Brown's inmate harassment grievance.  Moving Defendants' Memorandum at 13-14.  In the course of investigating Plaintiff's harassment grievance, Brown interviewed Plaintiff but concluded Plaintiff failed to produce any new information or to identify any further witnesses to question.  *Id.* at 13.  Brown's only other interaction with Plaintiff was to advise Plaintiff that Bezio had overturned the guilty disposition on one of the prison rule violations alleged in Hannigan's misbehavior report, and that Bezio's entire decision on White's misbehavior report had been overturned and expunged.  *Id.* at 13-14.  Moving Defendants rely in further  support of summary judgment on Plaintiff's failure to make any argument in opposition to summary judgment on the claims against Brown.  Moving Defendants' Reply at 6-7.

Consistent with Moving Defendants' argument, Brown states that as a DOCCS Captain at Attica, he could and did report staff misbehavior to his superiors, but had no ability to discipline staff members as all disciplinary issues were handled by the Bureau of Labor Relations in DOCCS Central Office in Albany, Brown Declaration ¶¶ 1, 6, nor was Brown personally involved in training individual corrections officers.  *Id.* ¶ 7. Although Brown, as "day Captain," was in charge of the overall inmate discipline program and responsible for SHU at Attica, Brown's duties included insuring prison disciplinary penalties were properly imposed and appeals results were properly instituted.  *Id.* ¶ 8.  Brown, however, denies any involvement in the November 17, 2007 assault by Hannigan against Plaintiff, and had no knowledge of any prior disciplinary problems with regard to Hannigan, White, or Carhart.  *Id.* ¶ 10.  Brown maintains he first learned of Plaintiff's allegations regarding the November 17, 2007 assault upon receiving Bea's Memorandum, which Brown then forwarded to his supervisor, Chappius.  *Id.* ¶¶ 11-12.  According to Brown, he does not know what Chappius did with the information in Bea's Memorandum, and Brown had no ability to discipline Hannigan or any other DOCCS officers Plaintiff alleges mistreated him.  *Id.* ¶ 12.  Upon being assigned to investigate the combined grievance Plaintiff filed regarding the alleged denial of medical attention following the assault, Brown interviewed Plaintiff, but found no evidence of misconduct by Bea, and noted Plaintiff's claims against Hannigan were also being investigated by the Inspector General's Office ("IG"), and Plaintiff's report on the investigation to Chappius completed Plaintiff's role in the matter.  *Id.* ¶¶ 17-25.

In response to a letter from Plaintiff dated February 5, 2008, complaining that although the 105.12 prison rule violation had been reversed, yet the $ 30 in restitution

imposed at the second disciplinary hearing had not been returned to Plaintiff's inmate account, Brown explained in a February 6, 2008 memorandum that because only one of the two charges in White's misbehavior report had been dismissed, the money could not be restored to Plaintiff's inmate account, and Brown had no ability to modify penalties imposed by disciplinary hearing officers.  Brown Declaration ¶¶ 26-29.  Brown also notified Plaintiff on March 3, 2008 that the results of the first disciplinary hearing on Hannigan's misbehavior report had been reversed and expunged by Bezio.  *Id.* ¶ 31.  Finally, Brown asserts that he had been informed that on April 8, 2008, Bezio reversed and expunged the results of the second disciplinary hearing on White's misbehavior report, such that the funds taken from Plaintiff's inmate account as restitution should have been reverse and expunged.  *Id.* ¶¶ 32-33.  It is significant that Plaintiff points to no evidence calling into question the veracity of Brown's statements.

Plaintiff's failure to meet his burden and point to any evidence in support of his claims against Brown requires dismissal of Plaintiff's claims against Brown.  *Goenaga*, 51 F.3d at 18 (to defeat a properly supported summary judgment motion, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor).  Moving Defendants' Motion thus should be GRANTED as to the claims against Brown.

### D.   Carhart

Plaintiff alleges Defendant DOCCS Corrections Officer Carhart stood nearby and watched while Hannigan, White, and other unidentified corrections officers assaulted Plaintiff on November 17, 2007, and conspired to violate Plaintiff's civil rights.  Amended Complaint ¶¶ 1, 33, 58.  Plaintiff's only other allegation mentioning Carhart is that it was

DOCCS's policy and practice that allowed DOCCS employees at Attica, particularly Hannigan, White, and Carhart, to cover up the excessive use of force and other constitutional violations against Plaintiff.  *Id.* ¶ 52.  In support of summary judgment on the claim against Carhart, Moving Defendants argue that Carhart, Hannigan, and White all agree Carhart was not present during the assault, such that the only evidence of Carhart's involvement is Plaintiff's unsubstantiated allegations against her.  Moving Defendants' Memorandum at 16.  Plaintiff's failure to argue otherwise is asserted by Moving Defendants in further support of summary judgment on the claim against Carhart.  Moving Defendants' Reply at 6-7.

Carhart, consistent with Moving Defendants' argument in support of summary judgment, states that on November 17, 2007, she was working the 3:00 P.M. to 11:00 P.M. shift at Attica and, as such, was on duty when Plaintiff was assaulted, but that Carhart was involved only in a frisk of Cell 32 on 27 Company, ordered by Hannigan, for which no contraband was found.  Carhart Declaration ¶¶ 4-7.  It is undisputed that on November 17, 2007, Plaintiff was assigned to Cell 12 on 36 Company.  Amended Complaint ¶ 21.  This is consistent with the Frisk Log Book entries showing that on November 17, 2007, Carhart was ordered by Hannigan to search Cell 32 on 27 Company, with no contraband found, whereas White was ordered by Hannigan to search Cell 12 on 36 Company with numerous contraband items discovered.  Carhart Dec. Exh. A.  Carhart further maintains that had she been involved in or witnessed the use of force against Plaintiff on November 17, 2007, Carhart would have remembered it.  Carhart Declaration ¶¶ 8-9.  Carhart's denial of any involvement in the November 17, 2007 search of Plaintiff's cell and subsequent use of force against Plaintiff is

corroborated by the deposition testimony given by both Hannigan and White.  See Hannigan Dep. Tr.[17] at 131-32; White Dep. Tr.[18] at 64-65.  Carhart's sworn statement that she was not involved in the search of Plaintiff's cell and subsequent use of force against Plaintiff, corroborated in part by both Hannigan and White and the Frisk Log Book entries for November 17, 2007, and unrebutted other than by Plaintiff's own statement, which is insufficient to create an issue of fact to avoid summary judgment, *Hayes*, 84 F.3d at 619 ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial"), establishes the absence of any triable issue on Plaintiff's claim against Carhart.  Accordingly, Moving Defendant's motion should be GRANTED as to Carhart.

> ### E.      Conway

Plaintiff alleges Defendant Conway, as Attica Superintendent, encouraged and tolerated the policies and practices pursuant to which DOCCS employees violated Plaintiff's civil rights, and failed to train, direct, supervise, or adequately control Defendants so as to prevent the alleged civil rights violations.  Amended Complaint ¶¶ 7, 54-55.  According to Plaintiff, Conway's approval of Plaintiff's erroneous convictions of the charged prison rule violations in Hannigan's and White's misbehavior reports establishes Conway's personal involvement in denying Plaintiff procedural due process right to call witnesses and in failing to provide Plaintiff with a fair hearing, *id*. ¶¶ 95, 116, and Conway's failure to act to correct such due process violations despite being in receipt of Plaintiff's formal complaints about the violations further establishes Conway

---

[17] References to "Hannigan Dep. Tr." are to pages of the transcript of Hannigan's deposition, filed as Plaintiff's Exh. 16 (Doc. No. 127).
[18] References to "White Dep. Tr." are to pages of the transcript of White's deposition, filed as Plaintiff's Exh. 17 (Doc. No. 128).

participated in the violations. *Id.* ¶¶ 142-46.  Plaintiff further maintains Conway ignored

Plaintiff's request to be transferred to another correctional facility upon being released

from SHU so as to avoid further retaliation by DOCCS personnel for filing grievances.

*Id.* ¶¶ 154-57.

In support of summary judgment, Moving Defendants argue Conway's only

personal involvement in the matters predicate to Plaintiff's claims was the appointment

of Polak and Dixon as the hearing officers for Plaintiff's first and second disciplinary

hearings, and that although Conway did possess authority to review the results of both

disciplinary hearings, Plaintiff never requested such review such that Conway cannot be

found to have participated in a failure to remedy or in the creation of a policy or custom,

or any gross negligence in training or supervising Defendants.  Moving Defendants'

Memorandum at 11.  Furthermore, because Conway was not authorized to discipline

DOCCS staff members, all disciplinary issues being handled by the Bureau of Labor

Relations in DOCCS Central Officer in Albany, Conway cannot be found to have been

personally involved in any failure to discipline any DOCCS employee.  *Id.* at 11-12.

Plaintiff's argument in opposition to summary judgment on his claims against Conway is

limited to asserting Conway's supervisory position renders Conway personally

responsible for the alleged due process violations in connection with the disciplinary

hearings.  Plaintiff's Memorandum at 4, 21.  In further support of summary judgment,

Moving Defendants point to the fact that in the Feb. 22, 2012 Order, Judge Arcara

dismissed Plaintiff's due process claims against Conway, Moving Defendants' Reply at

5, and that Plaintiff's assertion that Conway was copied on correspondence regarding

the alleged assault and inmate misbehavior reports, even if true, is insufficient to establish Conway was personally involved in the asserted civil rights violations.  *Id.* at 5.

Insofar as Conway had discretionary authority to review disciplinary hearing decisions, Plaintiff never requested Conway conduct such review.  Conway explains he reviewed all Use of Force Reports to ensure compliance with DOCCS regulations, as well as all inmate grievances claiming harassment by DOCCS staff, and would refer any disconcerting reports or grievances to the Office of the Inspector General for investigation.  Conway Declaration ¶¶ 9-11.  Conway also states he is not personally involved with the training of DOCCS personnel and does not possess the authority to discipline DOCCS personnel as DOCCS staff disciplinary issues are handled by the Bureau of Labor Relations in Albany.  *Id.* ¶¶ 7, 13.  Conway admits he can, pursuant to DOCCS Regulation 4932, review at his discretion any Tier disciplinary hearing upon an inmate's request and reverse the hearing's result, but that Plaintiff never requested such review.  *Id.* ¶¶ 14-16.  As such, Conway cannot be held responsible for failing to review the results of Plaintiff's disciplinary hearing.

Further, a review of the undersigned's R&R, adopted by Judge Arcara on February 22, 2012, establishes that the due process claims were dismissed as against Conway.  R&R at 43.  Nor, as Moving Defendants argue, Moving Defendants' Reply at 5, is a supervisory official's mere receipt of a letter advising of a denial of constitutional rights sufficient to establish the official was grossly negligent in supervising subordinates or deliberately indifferent to a denial of constitutional rights.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (holding inmate's letter to prison superintendent complaining that contraband seized from cell had been planted was

insufficient to hold superintendent liable under § 1983 for personal involvement in

deprivation of inmate's constitutional rights for failing to investigate).

As such, summary judgment should be GRANTED on the claims against

Conway.

### F.     Khahaifa

Plaintiff's sole reference to Khahaifa reads "Defendant Sibata Khahfia [*sic*] is or

was a First Deputy Superintendent at the Attica Correctional Facility and is being sued

in his official and individual capacity."  Amended Complaint ¶ 8.  Moving Defendants

argue Plaintiff's failure to make any allegations against Khahaifa requires granting

summary judgment in favor of Khahaifa and dismissing the action as against him.

Moving Defendants' Memorandum at 12.  Plaintiff offers no substantive argument in

opposition to summary judgment as to Khahaifa, and Moving Defendants, in further

support of summary judgment, assert Plaintiff has thus failed to meet his burden to

avoid summary judgment against Khahaifa.  Moving Defendants' Reply at 6-7.  Moving

Defendants further point to Plaintiff's reference to Khahaifa in Plaintiff's Statement of

Facts ¶ 5, as "part of the supervisory administrative team at Attica," as insufficient to

create an issue of fact to avoid summary judgment.  *Id*. at 3-4.

As stated, Discussion, supra, at 29, a defendant cannot be held liable under

§ 1983 based solely on a "mere linkage in the chain of command," *Richardson*, 347

F.3d at 435, or merely because the defendant held a high position of authority.  *Wright*,

21 F.3d at 501.  In the instant case, Plaintiff's references to Khahaifa as First Deputy

Superintendent at Attica, Amended Complaint ¶ 8, and as "part of the supervisory

administrative team at Attica," Plaintiff's Statement of Facts ¶ 5, establishes Plaintiff

seeks to hold Plaintiff liable for the alleged § 1983 violations based solely on Khahaifa's position in DOCCS chain of command, which is insufficient.

Accordingly, summary judgment should be GRANTED in favor of Defendant Khakaifa.

### F.     Lambert

Plaintiff alleges Defendant Lambert, as a DOCCS Lieutenant at Attica, Amended Complaint ¶ 3, authored the memorandum pursuant to which Hannigan ordered the November 17, 2007 search of Plaintiff's cell to look for items that Plaintiff, in his commissary grievance, asserted he never received.  Complaint ¶¶ 28-31.  Plaintiff further maintains Lambert failed to properly supervise the DOCCS officials who encouraged and tolerated the policies and practices of which Plaintiff complains, and failed to train, direct, supervise, or control Moving Defendants so as to prevent their violation of Plaintiff's constitutional rights.  *Id.* ¶¶ 54-55.  In support of summary judgment, Moving Defendants assert Lambert's only role with regard to the November 17, 2007 assault was to assign Hannigan to investigate Plaintiff's commissary grievance, but that Lambert did not discuss the grievance with Hannigan prior to assigning Hannigan to investigate the grievance, nor was Lambert aware of the details of such claim, including Plaintiff's requested refund of the money deducted from his inmate account for the subject commissary purchase, or the details of Hannigan's investigation into the claim.  Moving Defendants' Memorandum at 14-15.  Plaintiff's failure to argue in opposition in support of his claims against Lambert is referenced by Moving Defendants as establishing Plaintiff cannot meet his burden to avoid summary judgment on such claims.  Moving Defendants' Reply at 6-7.

Lambert, consistent with Moving Defendants' argument in support of summary judgment, states that as of November 17, 2007, he was the Administrative Lieutenant at Attica responsible for investigating inmate claims, but held no supervisory authority and did not supervise Hannigan or any of the Defendants, was unaware of any prior disciplinary problems with Hannigan, White, or Carhart, and was not authorized to discipline DOCCS staff as all disciplinary issues are handled by the Bureau of Labor Relations at DOCCS Central Office in Albany.  Lambert Declaration ¶¶ 7-10.  Lambert explains that as Attica's Administrative Lieutenant, he was responsible for reviewing inmate claims for lost property, including claims that commissary orders were not received.  *Id.* ¶¶ 11-15.  According to Lambert, after an inmate's lost property claim is filed with the Institutional Steward, the claim is forwarded to the Administrative Lieutenant who assigns a supervisor, usually a sergeant, to investigate the claim, and enters the name of the assigned supervisor into a log book.  *Id.* ¶¶ 13-15.  Lambert points to DOCCS paperwork establishing that Plaintiff's commissary grievance, dated October 31, 2007, seeking a refund of $ 70 deducted from his inmate account for a lost commissary order, was received in the business office on November 1, 2007, and assigned to Lambert on November 9, 2007.  *Id.* ¶ 17, and Exh. A.  Lambert explains that although on November 13, 2007, he assigned Hannigan to investigate the commissary grievance, Lambert did not discuss the grievance with Hannigan but simply forwarded the claim to Hannigan, recording the assignment in the Inmate Claims Log Book.  *Id.* ¶¶ 19-20, and Exh. B.  According to Lambert, Plaintiff's commissary grievance was one of two he assigned to Hannigan on November 13, 2007, with Lambert assigning four to himself.  *Id.* ¶ 21.  Although Plaintiff's inmate account was reimbursed on November 13,

44

2007 for the amount claimed in the commissary grievance, Lambert asserts the reimbursement must have occurred after Lambert assigned the matter for investigation to Hannigan because Lambert would not have made an assignment of a resolved matter. *Id.* ¶¶ 22-24. Lambert further maintains Hannigan did not complete his investigation of the commissary grievance until November 17, 2007, and Lambert is unaware of the results of such investigation. *Id.* ¶ 25-27. As such, Lambert maintains he did not violate any of Plaintiff's civil rights. *Id.* ¶ 28.

It is significant that Plaintiff does not dispute any of these assertions by Lambert. Nor does Plaintiff challenge the exhibits on which Lambert relies in support of summary judgment, including the commissary grievance and the Inmate Claims Log Book showing Lambert assigned the investigation of the grievance to Hannigan, but failing to establish that Lambert had any other involvement in the investigation of the commissary grievance. Accordingly, Lambert has met his burden of establishing evidence in the record shows no material issue of fact precluding summary judgment in favor of Lambert.

Summary judgment should thus be GRANTED as to Lambert.

### 4. Assault by White

As his Fourth Claim, Plaintiff asserts Hannigan and White subjected him to an assault in violation of New York common law. Amended Complaint ¶¶ 59-62. Moving Defendants argue in support of summary judgment that this claim is barred by New York Corrections Law § 24 ("§ 24") which provides exclusive jurisdiction for such claim lies in the New York Court of Claims as a claim against New York. Moving Defendants' Memorandum at 18-19. Plaintiff argues in opposition that the Supreme Court has held

§ 24 unconstitutional insofar as it precludes inmates from pursuing § 1983 actions, and the immunity afforded under § 24 is not absolute and is not available where the challenged corrections officers' actions occurred outside the scope of their employment. Plaintiff's Memorandum at 21 (citing *Haywood v. Drown*, 556 U.S. 729, 739-41 (2009). Moving Defendants have not argued in further support of summary judgment on this claim.

Plaintiff's claim against White for common law assault, Amended Complaint ¶¶ 59-62, is barred by New York Corrections Law § 24 ("§ 24") which provides exclusive jurisdiction for such claim lies in the New York Court of Claims as a claim against New York. *Brown v. Department of Correctional Services*, 2011 WL 2182775, at * 8 (W.D.N.Y. June 2, 2011). Further, "the immunity from suit in state court provided to [DOCCS] employees by § 24 extends to suits for tort claims based on state law against [DOCCS] employees in federal court." *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996) (determining that "by its plain terms, § 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute," and corrections officers "are entitled to invoke the benefits of § 24 irrespective of the forum in which [the plaintiff] chooses to pursue [his] claims." *Id.* at 15-16. In other words, where a state claim would have been dismissed pursuant to § 24 by a New York court, the district court must also dismiss such claims. *Id.* at 16.

The Supreme Court's finding that § 24 violated the Supremacy Clause, *Haywood*, 556 U.S. at 739-41, however, applies only with regard to claims brought under § 1983, a federal statute, and does not address whether § 24 precludes Plaintiff's common law assault claim in this court. *See Brown*, 2011 WL 2182775, at * 8 (denying

inmate plaintiff's motion to amend complaint to assert common law tort claims as futile because such claims would be jurisdictionally barred by § 24).  Since *Haywood*, district courts within the Second Circuit have continued to hold *Haywood* does not apply to the question of a district court's jurisdiction to hear pendent state-law claims against DOCCS officials.  *See*, *e.g. Brown*, 2011 WL 2182775 at * 8; *Joy v. New York*, 2010 WL 3909694, at * 4 (N.D.N.Y. Sept. 30, 2010) (citing cases); *Blanch v. Pirelli*, 2009 WL 2488737, at * 8 (S.D.N.Y. Aug. 7, 2009) (*Haywood* did not hold that [ ] § 24 is unconstitutional in its bar of state claims in state courts; it only held that state courts must be open to § 1983 federal claims").

This court, however, has already held, in connection with Moving Defendants' earlier motions to dismiss for failure to state a claim (Docs. Nos. 52 and 61), that Plaintiff has sufficiently alleged conduct which, if true, fell outside the scope of White's duties and, as such, would not be barred by § 24.  Specifically, by order filed February 22, 2012 (Doc. No. 75), Judge Arcara adopted the undersigned's R&R filed November 15, 2011 (Doc. No. 67), recommending a motion to dismiss the common law assault claim against White be denied because although the assaultive conduct to which Plaintiff alleges White subjected him occurred during the course of White's employment, such conduct, if it occurred, was not within the scope of White's employment, including that White acted with "deliberate disregard for human life and the rights of plaintiff" in subjecting Plaintiff to unprovoked beatings and deadly force.  *DeLee v. White*, 2011 WL 7415124, at * 18 (W.D.N.Y. Nov. 15, 2011), *adopted by* 2012 WL 590858 (W.D.N.Y. Feb. 22, 2012).

Moving Defendants, however, argue that unlike their prior motion to dismiss for failure to state a claim, discovery has since been conducted and there is evidence now before the court that was not available for the court's consideration on the earlier motions to dismiss establishing that White's actions on November 17, 2007, were within the scope of his employment.  Moving Defendants' Memorandum at 19.  Moving Defendants particularly point to evidence that White's actions on November 17, 2007 were under the direct supervision and orders of his superior, Hannigan, who assigned White to frisk Plaintiff's cell in connection with Plaintiff's commissary grievance, and that any ensuing assault stemmed from White's carrying out his duties in investigating Plaintiff's cell and maintaining order within the correctional facility.  *Id.*  According to Moving Defendants, even the use of excessive or brutal force can be within the scope of a corrections officer's employment for purposes of § 24.  *Id.*

Here, the evidence in the record does establish that White was, at the time of the assault on Plaintiff on November 17, 2007, acting within the scope of his employment insofar as Hannigan directed White to search Plaintiff's cell, but both Hannigan and White deny White was present in the day room were the alleged assault occurred.  *See* Frisk Log Book November 17, 2007 entry (showing Hannigan ordered White to search Plaintiff's cell); Hannigan Dep. Tr. at 49-59, 82 (Hannigan testifying that in connection with his investigation into Plaintiff's commissary grievance, Hannigan assigned White to search Plaintiff's cell on November 17, 2007, provided White with a list of commissary goods to look for in Plaintiff's cell during which White discovered numerous items of contraband and gang-related graffiti in Plaintiff's cell, but denying White was present in the day room where Hannigan used force against Plaintiff, maintaining he remained at

Plaintiff's cell while the search continued); White Dep. Tr. at 8-17,  24-26 (stating

Hannigan assigned White to conduct the November 17, 2007 search of Plaintiff's cell

and provided White with paperwork detailing the items for which White was to search,

and describing the items and graffiti White found during the search, but denying being

present in the day room when Plaintiff alleges he was assaulted).  This deposition

testimony is consistent with White's testimony at the disciplinary hearings held on

Hannigan's and White's Misbehavior Report that Hannigan directed White to search

Plaintiff's cell on November 17, 2007, but was not present with Hannigan and Plaintiff in

the day room where the allege assault occurred.  First Disciplinary Hearing Tr. at Bates

685-92; Second Disciplinary Hearing Tr. at Bates 661-63.  Nor did Plaintiff pose any

questions to White at either disciplinary hearing suggesting Plaintiff recalled White's

presence during the alleged assault.  Significantly, "the New York 'Court of Appeals has

instructed that an employee will be considered within the scope of his employment so

long as he is discharging his duties, 'no matter how irregularly, or with what disregard of

instructions.'"  *Ierardi v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) (quoting *Riviello v.*

*Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) ("the test has come to be whether the act

was done while the servant was doing his master's work, no matter how irregularly, or

with what disregard of instructions." (internal quotation and citation omitted)).

Therefore, such actions, "even if violative of plaintiff's constitutional rights, were clearly

done within the scope of [White's] employment."  *Heyliger v. Gebler*, 496 F.Supp.2d

250, 253 (W.D.N.Y. 2007) (holding correction officers who allegedly "committed an

unprovoked assault upon" plaintiff acted "clearly within the scope of [their] employment"

even if their alleged acts were "violative of plaintiff's constitutional rights," and thus state law assault claim was barred by § 24).

Accordingly, because Defendant White would be immune, under § 24, from liability on Plaintiff's New York common law assault claim in state court, White is likewise entitled to that same immunity in this court. *Baker*, 77 F.3d at 16. Summary judgment on Plaintiff's New York common law assault claim against White should thus be GRANTED.


5.     **Conspiracy**

In opposition to summary judgment, Plaintiff argues the facts of this case, specifically, that after filing his commissary grievance, Plaintiff was severely beaten and sexually assaulted, and subjected to false misbehavior reports resulting in Plaintiff's confinement in SHU, establishes triable issues of fact regarding Plaintiff's conspiracy claim. Plaintiff's Memorandum at 15-17. Moving Defendants, however, maintain that because the Complaint does not allege a civil rights, conspiracy claim pursuant to 42 U.S.C. § 1985 ("§ 1985"), Plaintiff should not be permitted to further amend the Complaint by asserting such claim in response to summary judgment. Moving Defendants' Reply at 5-6.

A plain review of the Amended Complaint establishes it is devoid of any conspiracy claim pursuant to § 1985. Moreover, New York does not recognize a common law action for conspiring to commit a tort. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy.") (citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d

102, 102-03 (N.Y. 1986) ("a mere conspiracy to commit a tort is never of itself a cause

of action." (internal quotation marks and citation omitted; alterations incorporated))).

Because the Amended Complaint was filed by Plaintiff's assigned counsel, it is not

entitled to the same liberal construction given pleadings filed by *pro se* litigants in

accordance with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  As such, the court

does not construe the Amended Compliant as asserting a conspiracy claim under §

1985 or New York law.

## **CONCLUSION**

Based on the foregoing, Moving Defendants' Motion (Doc. No. 102) should be

GRANTED; the matter should be scheduled for trial on the issues for which summary

judgment is not granted.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        November 6, 2014
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 6, 2014
            Buffalo, New York